## PIERCE *v.* INDSETH.

1. Judicial notice is taken of the seal of a notary public, and such seal, impressed upon either the paper or the wax thereunto attached, entitles his certificate of protest to full faith and credit. *So held,* where, in an action against the drawer of a foreign bill of exchange payable in Norway, such a certificate made in that country was, when put in evidence by the payee, accepted as proof of the presentment and non-payment of the bill.

2. The question as to whether the presentment was made in due time is determined by the law of the place where the bill is payable.

3. The deposition of a lawyer of Norway, to the effect that the holder of such a bill payable there at sight is allowed a year after its date within which to present it for payment, was, by the court below, properly admitted under the statute of Minnesota, which provides that the existence, tenor, and effect of all foreign laws may be proved by parol evidence, but that the court may, in its discretion, when the law in question is contained in a written statute, reject such evidence, unless it be accompanied by a copy thereof.

ERROR to the Circuit Court of the United States for the District of Minnesota.

This is an action by the plaintiff in the court below, Ole A. Indseth, against the defendants, composing the firm of Pierce, Simmons, & Co., on a foreign bill of exchange, payable at sight to his order, drawn by them at Redwing, in Minnesota, on the Christiania Bank, in Norway, which is as follows: —

"*Exchange* 15,441 $\frac{50}{100}$ *kroner per stamp* 2c.

"PIERCE, SIMMONS, & CO., BANKERS,
"RED WING, MINNESOTA, February 1, 1877.

" At sight of this original of exchange (duplicate unpaid) pay to the order of O. A. Indseth fifteen thousand four hundred and forty-one $\frac{50}{100}$ kroner, value received, and charge same to account of Sk. P. I. & Co., Chicago, as per advice from them.

"PIERCE, SIMMONS, & CO.
"To CHRISTIANIA BANK OF KREDIT KASSE, Christiania, Norway."

The value of these kroners in our money was $4,469.35.

Indseth resided at the time near Eidsvold, in Norway, and the bill was purchased by his agent in Minnesota, who forwarded it to him. He received it Feb. 27, 1877, and retained it in his possession until April 12 following, when he presented it to the bank for payment, which was refused. He then caused the bill to be protested by a notary of Norway for non-

payment. The drawers were notified of its non-payment by letter from the plaintiff, which they received at Red Wing as early as May 15, 1877, and also by the original certificate of. protest of the notary, which, with a translation, was, at that time, shown to one of them by the agent of the plaintiff, to whom the document was sent for that purpose.

It appears from the findings of the court below that the drawers had no money to their credit with the Christiania Bank when the bill was drawn, but depended for its acceptance and payment upon advices to the bank by Skow, Peterson, Isberg, & Co., bankers, at Chicago. That firm failed, and made an assignment on the 21st of March, 1877. It had, however, from February 28 to that date, inclusive, to its credit with the bank, money sufficient to pay the bill; but no portion of. it had been set apart for that purpose, and it has been since paid to the assignee of the firm. On the 15th of February, 1877, the drawers wrote to the payee a letter stating that, fearing their draft might not be paid, they had caused a cable despatch to be sent to Christiania directing payment; but there was no evidence that the bank received such a despatch, if sent, or gave them any credit on it.

Eidsvold, at or near which the plaintiff resided, is distant about fifty miles from Christiania, the place where the bank was situated, and between them there was daily communication by mail and by railway.

In proof of the presentment of the bill to the bank and the latter's refusal to pay the same, a copy of the notary's certificate of protest was given in evidence by the plaintiff, the defendants having stipulated for the admission of a copy with the like effect as the original, which was needed elsewhere. Subsequently the defendants themselves produced the original, for the purpose of showing its character, insisting, at the time, that it had no authenticity as the act of the notary, and was not, therefore, competent evidence of the presentation and non-payment of the bill.

To meet the objection of unnecessary delay in presenting the bill, the plaintiff gave in evidence, against the objection of the defendants, the deposition of a lawyer of Norway as to the law of that country respecting the presentation of bills of

exchange for payment. Exception was taken to the ruling of the court in its admission. It appeared, from the deposition, that by the law of Norway the holder of a foreign bill of exchange, payable at sight, is allowed a year after its date within which to present it to the drawee for payment; and that the drawer is not relieved from liability, if the presentation be not made within the year, unless he can prove that owing to the delay he has suffered a loss in his accounts with the drawee.

Evidence was offered by the defendants to show that the plaintiff, himself, had admitted his negligence in presenting the bill; but on objection of counsel it was excluded, to which ruling an exception was taken.

The court found in favor of the plaintiff for the full amount of the bill; and judgment having been entered on the finding, the case was brought to this court for review.

*Mr. Charles E. Flandrau* for the plaintiffs in error.
*Mr. Edward C. Palmer* for the defendant in error.

MR. JUSTICE FIELD delivered the opinion of the court, and after stating the case as above, proceeded as follows: —

The certificate of the protest of the bill of exchange by the notary in Norway was properly received in evidence. It is in due form, and bears what purports to be the seal of the notary. The seal, it is true, is impressed directly on the paper by a die with which ink was used. This is evident from inspection of the original, which has been transmitted to us from the court below for our personal examination.

The use of wax, or some other adhesive substance upon which the seal of a public officer may be impressed, has long since ceased to be regarded as important. It is enough, in the absence of positive law prescribing otherwise, that the impress of the seal is made upon the paper itself in such a manner as to be readily identified upon inspection.

The language used in *Pillow* v. *Roberts*, reported in 13 Howard, as to the sufficiency of a seal of a court impressed upon paper instead of wax or a wafer, is applicable here. Said the court, speaking by Mr. Justice Grier: "Formerly, wax was the most convenient and the only material used to receive and retain the impression of a seal. Hence it was said: *Sigillum*

*est cera impressa ; quia cera, sine impressione non est sigillum.*
But this is not an allegation that an impression without wax is
not a seal, and for this reason courts have held, that an im-
pression made on wafers or other adhesive substances capable
of receiving an impression, will come within the definition of
' *cera impressa.*' If, then, wax be construed to be merely a
general term including within it any substance capable of re-
ceiving and retaining the impression of a seal, we cannot per-
ceive why paper, if it have that capacity, should not as well be
included in the category. The simple and powerful machine,
now used to impress public seals, does not require any soft or
adhesive substance to receive or retain their impression. The
impression made by such a power on paper, is as well defined,
as durable, and less likely to be destroyed or defaced by vermin,
accident or intention than that made on wax. It is the seal
which authenticates, and not the substance on which it is im-
pressed, and where the court can recognize its identity, they
should not be called upon to analyze the material which ex-
hibits it."

Here there is no difficulty in identifying the seal. The im-
pression, which is circular in form, has within its rim the
words "Notarial Seal, Christiania." Besides, the court will
take judicial notice of the seals of notaries public, for they are
officers recognized by the commercial law of the world. We
thus recognize the seal to the document in question as that of
the notary in Norway, and as such authenticating the certificate
of protest and entitling it to full faith and credit. Greenleaf's
Evid., sect. 5; Story on Bills, sect. 277; *Townsley* v. *Sumrall*,
2 Pet. 170; *Chanoine* v. *Fowler*, 3 Wend. (N. Y.) 173; *Hal-
liday* v. *McDougall*, 20 id. 81; *Carter* v. *Burley*, 9 N. H.
558.

The certificate being admitted, proved the presentation of
the bill to the bank on the 12th of April, 1870, and its non-
payment. That this presentation was made within the period
allowed by the law of Norway appears from the deposition of
a lawyer of that country, taken under a commission from the
court. That law allowed a year after the issue of the bill for
its presentation; and on the question of timely presentation
the law of the place where a foreign bill of exchange is payable

governs, and not the law of the place where it is drawn. In giving a bill upon a person in a foreign country, the drawer is deemed to act with reference to the law of that country, and to accept such conditions as it provides with respect to the presentment of the bill for acceptance and payment. Thus, where days of grace on bills are different in the two countries, the rule of the place of payment must be followed. In England and the United States three days of grace are usually allowed; in France there are none, and in some places the number of days varies from three to thirty. Whatever is required by law to be done at the place upon which the bill is drawn, to constitute a sufficient presentment either in time or manner, must be done according to that law; and whatever time is permitted within which the presentment may be made by that law, the holder may take, without losing his rights upon the drawer, in case the bill is not paid. So, also, if the bill be dishonored, the protest by the notary must be made according to the laws of the place. It sometimes happens that the several parties to a bill, as drawers or indorsers, reside in different countries, and much embarrassment might arise in such cases if the protest was required to conform to the laws of each of the countries. One protest is sufficient, and that must be in accordance with the laws of the place where the bill is payable.

In this case the bill having been protested, the drawers were notified of its dishonor by letter from the payee, received by them on the 15th of May following, and also by personal delivery at about the same time of the original certificate of the protest, with a translation of it into English, to one of the drawers by an agent of the payee, to whom they were transmitted for that purpose. No question is made that this notice was not sufficient to charge the drawers.

The testimony of the lawyer of Norway as to the law of that country was admissible under the statute of Minnesota, which provides that " the existence and the tenor or effect of all foreign laws may be proved as facts by parol evidence, but if it appears that the law in question is contained in a written statute or code, the court may, in its discretion, reject any evidence of such law that is not accompanied by a copy thereof."

The general rule as to the proof of foreign laws is that the law which is written, that is, statute law, must be proved by a copy properly authenticated; and that the unwritten law must be proved by the testimony of experts, that is, by those .acquainted with the law. *Ennis* v. *Smith,* 14 How. 400. But this rule may be varied by statute, and that of Minnesota leaves it to the discretion of the judge to require the production of a copy of the written law when the fact appears that the law in question is in writing. The discretion of the judge here was not improperly exercised, even if in such case his action would be the subject of review, as contended by counsel.

The admission of the payee that he had been negligent in presenting the bill was properly excluded. His negligence in that respect could not have affected his legal rights, if in point of fact the bill was presented within the time allowed by the laws of Norway.

We have thus far assumed that the drawers were entitled to notice of the presentation and non-payment of the bill. But it may be doubted whether such was the fact. They had no funds with the bank in Norway when the bill was drawn or at any other time, and they relied for its payment upon the advices of third parties. Although such third parties had funds at the bank after the bill had been received by the payee in Norway, there is no evidence that they ever advised the bank to pay the bill out of such funds. It is found by the court that the bank never set apart any portion of them to meet the bill. The cable despatch of the drawers, of which the letter of February 15 speaks, if it ever reached the bank, does not appear to have induced it to give them any credit. In the most favorable view, therefore, which could be taken of the position of the drawers, we see nothing which relieves them from liability.

*Judgment affirmed.*