# Richmond.

102   519|
102   630|

## Loyd v. Loyd's Executor and Others.

### March 10, 1904.

1. Wills—*Construction—Case in Judgment—Limitation after a Valid Disposition—Failure to Vest—Remoteness.*—A testator had seven children, all of whom survived him. Subsequently two of them died without descendants. By his will he created a trust fund of his estate in the hands of his executors, and directed annuities to be paid to his children and the descendants of such of his children as might die in his lifetime, by stocks, and then, after declaring in what proportions his estate should be divided amongst his children and their descendants, disposed of the principal of said fund by clause eleven of his will, which is as follows: "On the death of any one of my children, or of any descendant of any child who may be dead when this will takes effect, if such person leaves descendants, it shall be the duty of my executor to pay over to such descendants the share which, under the provisions of this will, belonged to their immediate ancestor. If such person have no descendants, then said share shall lapse into my estate and become a part thereof to be divided hereunder, except that where the person so dying was a descendant of one of my children, and there be other descendants then living of the same child, the share of the person dying shall pass and be paid to said other descendants of the same child according to the statute of descents and distributions in Virginia."

*Held*:

   1. The share of the two children who died without descendants lapsed into the estate of the testator, to be divided as other parts of the principal fund were to be divided, not among *the first takers*, but among the *second takers;* in other words, as though they had died without descendants in the testator's lifetime.

   2. The fact that some of the limitations may never vest cannot impair the validity of those that do. The general rule on this

subject is that where a valid disposition of property is followed by a limitation over, which from some cause fails to take effect, that fact does not invalidate the previous disposition.

3. The limitations over to the second takers are not void for remoteness, as all of them must take effect within the time limited by the rule against perpetuities.

Appeal from a decree of the Circuit Court of the city of Lynchburg in a suit in chancery, wherein the appellant, James E. Loyd, was the complainant, and the appellees were the defendants.

*Affirmed.*

The opinion states the case.

*E. E. McKay* and *Lee & Howard,* for the appellant.

*Wilson & Manson* and *Leon Goodman,* for the appellees.

WHITTLE, J., delivered the opinion of the court.

This controversy involves the construction of certain clauses of the will of William H. Loyd, deceased.

Testator was survived by seven children and six grandchildren. Two of the children, Ardelia and Sarah A. Loyd, died after the testator, unmarried and leaving no descendants. Whereupon appellant, James E. Loyd, a son of testator, filed a bill in equity in the Circuit Court of the city of Lynchburg against the executor and beneficiaries, in which he maintains that, according to the true construction of testator's will, upon the death of appellant's two sisters, leaving no descendants, their shares in the principal fund of the estate immediately became divisible among the surviving children. The bill prays that an account may be taken to ascertain those shares, and that the executor be required to pay to complainant and the other sur-

viving children their respective and proper proportions of such shares, and also that a similar disposition be directed to be made of the share of any other child thereafter dying without descendants.

On the hearing the Circuit Court, in denying the prayer of the bill, decreed:

"That, under the provisions of said will, when any child of William H. Loyd died, or hereafter dies, leaving no descendants, the share of the principal of such dead child remained or will remain a part of the *corpus* of the trust estate created by the will, as completely as though such child had died without descendants before the testator; and the contention of the plaintiff that such share is divisible at the death of such child, and ceases to be a part of the trust estate created by the will, to be held by the executor, is unsound, and the action of the executor in refusing to distribute and pay over the shares of Ardelia Loyd and Sarah A. Loyd, who have died since the testator without descendants, to the other children of William H. Loyd, deceased, . . . was in accordance with the true interpretation of the will of Willam H. Loyd, deceased, as the said shares remained a part of the trust estate to be held by the executor."

The clauses of the will affected by this litigation are as follows:

"VII. All the residue of my estate, both real and personal, including the reversion in the real estate given to my wife for life, I desire shall be held by my executor and invested and re-invested in such safe and profitable property, real or personal, as he may deem most advantageous to the beneficiaries in said fund. And to that end he is authorized and empowered to sell and convey any part of my estate, either real or personal, which he may deem most conducive to the welfare of those interested, holding the new investment subject to the same powers of sale and conveyance herein granted and to the same trusts and conditions herein prescribed. Purchasers from my said executor

shall not be required to look to the application of the purchase money.

"VIII. The net income from the fund created by the last clause I desire my executor to divide in the proportions hereinafterwards declared, amongst my children living at my death, and the lawful descendants of any of them who may be then dead, said descendants to take only such proportion as the child from whom descended would have taken had such child been living when this will takes effect; and hereafter in this will whenever the term child or children is used, it is to mean my child or children, and is to include the descendants of such child or children, should such child or children be dead when this will takes effect, in which case such descendants shall take only that proportion of the income or principal which the child or children from whom descended would have taken had such child or children been living when this will takes effect.

"IX. The net income from the fund above created and held by my executor, I desire my executor to divide and pay over semi-annually to my children living at my death (the descendants of those then dead to take the share of the child from whom descended), but he shall pay to my son, James E. Loyd, only one-half as much as to my other children, it being my intention to give him and his descendants, should he be dead, only one-half as much as I give each of my other children and their descendants, he having already received large sums from me.

"X. The said fund shall be held by my executor undivided except as hereinafterwards directed, but it shall be held by him subject to the terms, conditions and trust herein declared, as the property of my children living at my death and the descendants of those who may be then dead; but in such proportions that the share of my son, James E. Loyd, and his descendants therein shall be equal only to one-half the value of the share of each of my other children and their descendants, and in ultimately dividing the principal of said fund, my executor will see that

the division is so made that this proportion shall be carefully preserved. My intention is to give each of my other children double as much of my estate as I hereby give to my said son, James E. Loyd, and to make the shares of my said other children all equal.

"XI. On the death of any one of my children or of any descendant of any child who may be dead when this will takes effect, if such person leave descendants, it shall be the duty of my executor to pay over to such descendants the share which under the provisions of this will belonged to their immediate ancestor. If such person have no descendants, then said share shall lapse into my estate and become a part thereof to be divided hereunder, except that where the person so dying was a descendant of one of my children, and there be other descendants then living of the same child, the share of the person dying shall pass and be paid to said other descendants of the same child according to the statute of descents and distribution in Virginia."

By the seventh clause, testator empowers the executor to invest his estate in such safe and profitable property, real or personal, as he may deem most advantageous to the beneficiaries of the fund.

Clause 8 declares who are entitled to the net income arising from the principal fund created by the previous clause; while clause 9 directs the executor to divide and pay over such net income semi-annually to testator's children living at his death (the descendants of those then dead to take the share of the child from whom descended), except that he is to pay to James E. Loyd a half share only. These three clauses, it will be observed, apply to and affect merely the net income from the estate; while the two succeeding clauses, 10 and 11, deal with the capital or principal fund.

Clause 10 provides that the principal fund shall be held by the executor undivided, "except as hereinafterwards directed,

but it shall be held by him subject to the terms, conditions and trust herein declared, as the property of my children living at my death and the descendants of those who may be then dead; but in such proportions that the share of my son, James E. Loyd, and his descendants therein shall be equal only to one-half the value of the share of each of my other children and their descendants, and in ultimately dividing the principal of said fund, my executor will see that the division is so made that this proportion shall be carefully preserved. My intention is to give each of my other children double as much of my estate as I hereby give to my son, James E. Loyd, and to make the shares of my said other children all equal."

Clause 11 provides for the ultimate disposal of the capital or principal fund.

From an attentive consideration of the foregoing clauses, it will be seen that it was the primary purpose of the testator to limit the interest of the first takers under his will to the income from his estate only. Presumably that precaution was taken by the testator with the intention of insuring a certain support to the first takers for life, by protecting the *corpus* of the estate against their improvidence or other fortuities.

Clause 11 contains the limitation over after the death of the first taker, and provides for three contingencies:

(1) The death of the first taker leaving descendants, in which event the trust, as to that share, is to determine; the language of the will being: "It shall be the duty of my executor to pay over to such descendants the share which under the provisions of this will belonged to their immediate ancestor."

(2) "If such person"—that is, the first taker—"have no descendants, then said share shall lapse into my estate and become a part thereof to be divided hereunder." And

(3) "Where the person so dying was a descendant of one of my children, and there be other descendants then living of the same child, the share of the person dying shall pass and be

paid to said other descendants of the same child, according to the statute of descents and distributions in Virginia."

At the death of the first taker, upon the happening of either the first or third contingency, his share in the principal fund must be immediately distributed. That is to say, if the first taker dies, leaving descendants, the executor is not authorized to hold that share any longer, but must pay it over to such descendants. So, if the first taker were himself a descendant of a child who had died in testator's lifetime, and there were other descendants of the deceased child living, it would be also the duty of the executor to pay over the share of the first taker, upon his death, to the surviving descendants.

But in the second contingency, where the first taker dies, leaving no descendants, the will not only does not provide for the payment of such share to the surviving first takers, as appellant contends, but specifically prescribes that the share shall lapse into testator's estate, and become a part thereof, to be divided thereunder.

To sustain the appellant's contention would not only do violence to the plain language of the will, but would likewise defeat the manifest object of the testator to limit the estate of the first taker to the usufruct of his share in the principal fund for life, without encroaching upon the *corpus* of that fund.

As remarked, in the first and third contingencies the will clearly provides for an immediate distribution of the first taker's share of the principal fund; but in the second contingency it as plainly declares that there shall be no immediate distribution of such share, but that it shall lapse into the estate. The requirement "to be divided hereunder," in the light of the context, imports that the share is to be divided as other parts of the principal fund are to be divided, not among the first takers, but among the second takers. The contention that testator resorted to this involved method of effectuating an immediate distribution of the share in the principal fund among the surviving first

takers upon the happening of the second contingency, in order to preserve the scheme by which appellant and his descendants were to receive only half portions in the shares of other distributees, cannot be maintained without a plain departure from the literal import of the language employed. It is inconceivable that the draftsmen of the will, who has so clearly and intelligently expressed the wishes of the testator in all other particulars, should have been so infelicitious in dealing with this important branch of the subject. Indeed, the purpose attributed to testator in that regard, of limiting appellant and his descendants to half portions in the estate, had already been adequately safeguarded by clause ten of the will.

The third contingency, provided for by the eleventh clause, can never arise, because none of the testator's children died during his lifetime. So that only two contingencies demand consideration, namely, (1) the death of a child with descendants; and (2) the death of a child without descendants. Both contingencies are clearly provided for by the will. In the former case, upon the death of the first taker his share in the principal fund is to be immediately divided among his descendants, while in the latter the share of the first taker lapses into the estate, to pass, not to the surviving first takers, but as a substitutional bequest, under the general scheme of the will, to the descendants of such other first takers as may die, leaving descendants.

By the death of Ardelia Loyd and Sarah A. Loyd without descendants, the last contingency has happened, and there can be no distribution of their shares in the principal fund among the surviving first takers; but as indicated, those shares, by provision of the eleventh clause, lapse into the estate, and become a part of it, to be held by the executor and divided in accordance with the requirements of the will, upon the happening of the contingency provided for in that clause, and in the proportions prescribed by the tenth clause.

It is true that if the unexpected should happen, and the six grandchildren living at the commencement of this litigation should die before their parents, and no other children should be born and survive their parents, upon the death of the last surviving child without descendants an intestacy would ensue as to the undistributed shares in the principal fund.    But the circumstance that some of these limitations over may never vest cannot impair the validity of those that do vest; the general rule on the subject being that where a valid disposition of property is followed by a limitation over, which from some cause fails to take effect, that fact does not invalidate the previous disposition. *Gore* v. *Gore,* 2 P. Wms. 28; *Goldsborough* v. *Martin,* 41 Md. 488; *Heald* v. *Heald,* 56 Md. 300; *Lawrences' Estate,* 136 Pa. 354, 20 Atl. 521, 11 L. R. A. 85, 20 Am. St. Rep. 925; *Saxton* v. *Webber,* 83 Wis. 617, 53 N. W. 905, 20 L. R. A. 509.    The limitations in this instance must all vest in interest, if at all, during the life or lives in being, and ten months and twenty-one years thereafter.    They do not, therefore, violate the rule against perpetuities.    *Frazier* v. *Frazier's Ex'rs,* 2 Leigh, 642; 2 Min. Inst. (2d Ed.) 376 *et seq.*

In the case of *Bulkley* v. *Depeyster,* 26 Wend. 21, "where a testator by his will bequeathed annuities to five of his children, and directed that on the death of either without issue the annuity bequeathed to the child dying should be equally divided among the survivors, but, if there was issue, then the annuity to be paid to such issue during the lifetime of the wife of testator, and on her death the principal of such annuity; that, upon the decease of any of the five children after the death of the wife of testator, a like portion of the principal of his estate should be paid to the issue of the child so dying; and that a final distribution and settlement of his estate among his grandchildren should be had immediately after the death of the survivor of his children—it was held that the vesting in possession of the several portions of the estate was not postponed beyond two lives in be-

ing at the time the will took effect, and consequently that the will was a valid and operative instrument, within the provisions of the statute."

The rule is directed against future contingent interests only, and has no application where the limitation must take effect, if at all, immediately upon the death of life tenants, in whom the previous estate is vested.

It follows from these views that the decree complained of is without error, and must be affirmed.