## In re INTERNATIONAL MAHOGANY CO.

(Circuit Court of Appeals, Second Circuit. May 22, 1906.)

### No. 278.

**1. EVIDENCE—PROOF OF FOREIGN LAW.**

The law of a foreign country on a given subject cannot be proved merely by the introduction in evidence of excerpts from its written laws, without showing their construction by its courts but should be proved by the testimony of lawyers of that country.

[Ed. Note.—For cases in point, see vol. 20, Cent. Dig. Evidence, § 1661.]

**2. BANKRUPTCY—DEFECTIVE MORTGAGE—CURING DEFECT AFTER BANKRUPTCY.**

Where a bankrupt corporation, prior to its bankruptcy, to secure an issue of bonds had executed a mortgage on lands in Cuba which had there been filed for registry but not recorded owing to a technical defect, the court will not enjoin the directors from authorizing the execution and delivery of a curative mortgage after bankruptcy, it appearing that under the law of Cuba, the mortgage will be valid from the date of the entry in the recorder's books of the fact of its presentation, if the defect is corrected and the instrument is thereafter duly recorded; the trustee in bankruptcy having no greater right to object to the correction than the general creditors of the bankrupt would have had if the bankruptcy had not intervened.

Petition for Revision of Proceedings of the District Court of the United States for the Southern District of New York in Bankruptcy.

On petition to review order denying motion for order to enjoin directors of the bankrupt corporation from passing a resolution authorizing the Register of the Province of Puerto Principe, in the island of Cuba, to receive a certain mortgage made by the bankrupt corporation prior to its adjudication as a bankrupt.

L. Oppenheimer, for petitioner.

Herbert Barry and Gerrard Glenn, for respondent.

Before LACOMBE, TOWNSEND, and COXE, Circuit Judges.

TOWNSEND, Circuit Judge. The International Mahogany Company, prior to its bankruptcy, on September 30, 1904, executed a mortgage on real estate, situated in the Province of Puerto Principe, in the island of Cuba, to the Knickerbocker Trust Company, as trustee, for an issue of bonds amounting to the par value of $1,000,000. A portion of this issue has passed into the hands of divers individuals as purchasers for value, and the remaining bonds have been deposited with said Knickerbocker Trust Company as part collateral for a loan of $225,000, made to the Company by said Knickerbocker Trust Company. After execution, this mortgage was entrusted to the attorney of the bankrupt for record and it was duly lodged for record, but owing to certain technical objections

to the mortgage, in its omission to specify by a certain additional Cuban unit of measure the area of the land conveyed, and a failure to specify the value of the property according to the appraisal of the contracting parties, it was not recorded.   Thereupon, a form of instrument intended to obviate these objections was forwarded to the bankrupt and was executed by it.   Thereafter, the trustee filed a motion for an order enjoining the directors of the company from passing said resolution, and it was arranged that the instrument, after execution, should be left, pending the determination of said motion, in the custody of the trustee in bankruptcy.   The court, after hearing the parties, denied the motion, and ordered the trustee to deliver said supplemental instrument to the Knickerbocker Trust Company.   Thereupon, this petition to review said order was brought.  The question presented upon this petition is whether the corporation should be permitted to execute and deliver said supplemental instrument to remedy said technical defects or whether, by reason thereof, the mortgage must be invalidated and set aside.   The trustee admits that the objections now made by him would be available in a foreclosure of the mortgage in Cuba, but desires that they be disposed of in this court.

It is to be noted at the outset that no question is raised as to the corporate power of the bankrupt corporation to execute and deliver said instrument.   The position of the trustee is stated by his counsel as follows:

"It is not contended by the trustee that the bankrupt ceased by the adjudication in bankruptcy to be a corporation, nor that it thereby forfeited its rights to be a corporation, but it is maintained that all the title to and control over the bankrupt's property as distinct from its franchise to be a corporation has passed to the trustee in bankruptcy as of the date of the filing of the petition."

The trustee further contends:

"That the attempted execution of the instrument in question is a usurpation of the powers of the trustee and a contempt of court, in that title to the property has passed to the trustee."

But the proposed supplemental declaration and resolution neither purports nor attempts to affect the title to the property of the bankrupt prior to the adjudication which has vested in the trustee.   It merely operates to cure certain formal defects in a mortgage executed by the bankrupt prior to its bankruptcy, in accordance with a covenant for further assurance contained in the mortgage deed itself.

The argument of the trustee is predicated upon the claim that by the Cuban law an unrecorded mortgage is void as to creditors as well as to purchasers without notice, that the trustee stands in the position of such creditors or purchasers, and, therefore, even if the conveyance in question be construed to be an equitable mortgage, it will not avail as against the trustee because it has not been recorded.

There is no proper or sufficient evidence in support of the claim as to the provisions of the Cuban law relating to the recording of

mortgages. The affidavit of the trustee in the court below on this point is as follows:

"That your deponent has made energetic efforts, both at the office of the Cuban Consul and through attorneys, to obtain a copy of the law of Cuba as concerned the recording and registry of mortgages of real property, and that annexed hereto is a copy of the mortgage law for Cuba, Porto Rico, and the Philippines, published by the War Department of the United States government in the year 1899, and which your deponent believes is the law of Cuba governing mortgages at the present time, and your deponent is further informed by the Cuban Consul in this city that the said law is the law of Cuba as it stands to-day."

The volume referred to is not before us and no citations therefrom are printed in the record, although what appears to be a copy of certain provisions therein is printed in the brief for the trustee. But, irrespective of these defects of proof and of the fact that it nowhere appears that said provisions are embodied in the existing Cuban law, this method of attempting to prove a foreign law is unprecedented and insufficient, and has recently been specifically disapproved by this court in The Asiatic Prince, 108 Fed. 287, 47 C. C. A. 325, where Judge Lacombe, delivering the opinion of the court, said as follows:

"The law of a foreign country and its commercial usages are proved here by calling its lawyers and merchants and interrogating them. That has been done in this case, with a result which certainly warrants the conclusion that the proof is overwhelmingly the one way. It is true that as to the law of Brazil the only witness called by claimant was a young lawyer, but his statements are direct, positive, and reiterated. * *. * There was abundant opportunity to take the testimony of some other lawyer in the District Court, if the statements of claimant's witness were inaccurate, and to make application here to take further proofs, but libelant has contented himself with printing copious excerpts from the statute law of Brazil, which he insists do not sustain the witness' statements. * * * Such a method of criticising the testimony of a foreign lawyer as to the law which prevails in his country is unpersuasive; there is much more than the text of a statutory enactment to be considered; departmental regulations, administrative construction, judicial exposition are often quite as important. The text of the act of Congress of February 26, 1885, c. 164, 23 Stat. 332 [U. S. Comp. St. 1901, p. 1290] might well convey to a jurist in some foreign country a different meaning from that which it conveys to a lawyer here, who is familiar with Holy Trinity Church v. U. S., 143 U. S. 457, 12 Sup. Ct. 511, 36 L. Ed. 226."

This decision is directly in point when applied to the present case.

The quotations from the Cuban mortgage law of 1899 consist of mere declarations that "instruments * * * which are not duly recorded or entered in the registry cannot prejudice third persons," etc.

On the other hand, counsel for the company has introduced the affidavit of a member of the Cuban bar, who deposes that he is familiar with the existing Cuban law and that thereby the right of priority of a mortgage creditor is protected from the date of the entry in the recorder's books of the fact of presentation of the mortgage, provided that curable defects, if any, are duly corrected and the mortgage is, thereafter, duly recorded, and that, in his opinion, upon the admitted facts as to the mortgage in question, in case it

should be duly corrected, as proposed, and duly recorded, the rights of the mortgagee would be so perfected as to enable it to institute foreclosure proceedings in accordance with the provisions of the mortgage. In view of this declaration it would seem that even under the Cuban law of 1899, as quoted by the trustee, the instrument had been "duly entered in the registry," and that after due record the rights of the mortgagees would be protected against third parties.

One of the citations by the trustee from the Cuban law of 1899 is as follows:

"Those who have not participated in recorded instruments or contracts shall be considered as third persons."

The trustee interprets this provision as meaning that unrecorded mortgages are invalid as to general creditors, judgment creditors, and purchasers without notice, and asserts that the trustee takes a title which is higher than that of the bankrupt. But this court, in Re New York Economical Printing Co., 110 Fed. 514, 49 C. C. A. 133, has held directly to the contrary. There, Judge Wallace, delivering the opinion of the court, says as follows:

"The bankrupt act does not vest the trustee with any better right or title to the bankrupt's property than belongs to the bankrupt or to his creditors at the time when the trustee's title accrues. The present act, like all preceding bankruptcy acts, contemplates that a lien good at that time as against a debtor, and as against all of his creditors, shall remain undisturbed. If it is one which has been obtained in contravention of some provision of the act which is fraudulent as to creditors, or invalid as to creditors for want of record, it is invalid as to the trustee."

This language is quoted with approval in Hewit v. Berlin Machine Works, 194 U. S. 296, 24 Sup. Ct. 690, 48 L. Ed. 981.

In these circumstances, it is unnecessary to consider the argument of counsel for the company, supported by the opinion of the district judge, that an equitable lien was created by the mortgage, which a court of equity here, having the parties before it, would enforce, nor the construction of section 67a of the bankrupt act of July 1, 1898, c. 541, 30 Stat. 564 [U. S. Comp. St. 1901, p. 3449], which is fully discussed in New York Economical Printing Co., supra. It is there held that section 67a should be construed as one designed to conserve the rights of creditors and mortgagees respectively as they existed prior to the bankruptcy proceedings, not to create new rights in the creditors, nor to take away any rights of a mortgagee.

We are of the opinion that the claim under this mortgage is a valid lien against the trustee, and that the defects in the mortgage should be corrected.

The order of the District Court is affirmed, with costs.

NOTE.—The following is the opinion of Holt, District Judge, on overruling the motion for injunction: .

HOLT, District Judge. The questions involved in this motion are novel and difficult. If the claim of the mortgagee was not, for want of record, a valid lien as against claims of the creditors of the bankrupt at the time of

the adjudication, I think it very doubtful, under section 67a, of the bankrupt act of July 1, 1898, c. 541, 30 Stat. 564 [U. S. Comp. St. 1901, p. 3449] whether anything could be done afterwards to render it valid. At the same time the argument that a court of equity would have power to direct the bankrupt to execute such an instrument as is proposed to be delivered in this case, in a direct suit brought for that purpose, is very weighty, and if such a judgment can be rendered in a plenary suit, I see no reason why this court should not permit the same result to be accomplished by a simpler process. I think, too, that the claims that the filing of the mortgage in the Cuban record office was, under the circumstances, equivalent, in its legal effect, to recording it, and that the mortgagee has at least an equitable mortgage which the courts would enforce, are very strong. At all events, I think that the alleged defects in the form of the mortgage which have led to the recording officer in Cuba refusing to record it should be cured, if possible. The mortgagor has received and the mortgagee has paid out $275,000 on the faith of the validity of this mortgage, and there is no justice in permitting it to be invalidated if it can be prevented.

Motion denied.