GUARANTY TRUST CO. OF NEW- YORK v. HANNAY et al.

(Circuit Court of Appeals, Second Circuit.    December 9, 1913.)

. No. 62.

**1. CARRIERS (§ 46\*)—BILLS OF LADING—RIGHTS OF TRANSFEREES—WHAT LAW GOVERNS.**

Where a contract for the purchase and sale of cotton to be shipped from the United States to Liverpool was made in England, and expressly provided that bills of exchange for shipments should be drawn on a Liverpool bank, and such a bill, with bill of lading attached, was presented for acceptance to such bank and accepted and paid in England, the rights of the parties on the subsequent discovery that the purported bill of lading was a forgery are governed by the law of England.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 220;  Dec. Dig. § 46.\*]

**2. EVIDENCE (§§ 517, 541\*) — SUBJECTS OF EXPERT TESTIMONY — UNWRITTEN LAW OF FOREIGN COUNTRY—QUALIFICATION OF EXPERTS.**

The unwritten law of a foreign country must be proved by the parol testimony of experts, and lawyers who are practicing in such ·country are competent as experts to prove it.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2327, 2354;  Dec. Dig. §§ 517, 541.\*]

**3. CARRIERS (§ 58\*)—BILLS OF LADING—RECOVERY OF PAYMENT.**

A bill of exchange, with a bill of lading attached, drawn by a firm of American cotton dealers on a Liverpool bank in accordance with a contract for the sale and shipment of cotton to plaintiffs in Liverpool, was purchased by defendant bank, presented to and accepted and paid by the Liverpool bank under authority from plaintiffs. Later it was discovered that the bill of lading was forged, and that no cotton had been shipped. Held, that under the law merchant of England as established by expert testimony, the instrument and its acceptance were unconditional;  that there was no implied warranty of the genuineness of the bill of lading by defendant, and that it could not be required to repay the money received.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 179–190;  Dec. : Dig. § 58.\*]

In Error to the District Court of the United States for the Southern District of New York.

Action at law by Anthony S. Hannay and others against the Guaranty Trust Company of New · York.    Judgment for plaintiffs, and 'defendant brings error.    Reversed.

See, also, 187 Fed. 686.

This case comes up on writ of error to review a judgment rendered in the District Court for the Southern District of New York. The defendants in error were the plaintiffs below, and the plaintiff in error was the defendant below, and will be hereinafter so called. The plaintiffs are British subjects, and are engaged in business in Liverpool, England. The defendant is engaged in banking in the city of New York, and in the year 1912 handled foreign bills of exchange amounting to $236,000,000. Knight, Yancey & Co., at the time a mercantile firm of Alabama engaged in the business of buying and selling cotton, entered into an agreement with the plaintiff on February 1, 1910, to sell them 1,000 bales of cotton. In accordance with this agreement

they drew a bill of exchange on the Bank of Liverpool—admitted to be the plaintiffs' agent, which bill was in the following form:

[15 shillings foreign bill stamp cancelled]
Knight, Yancey & Co.
 Cotton
Decatur, Ala. U. S. A.
Sale date
 2/1
 Grade
 F M T

27 Apr. 1910
Decatur, Ala. U. S. A.
Exchange for

£1464  9  0
February 10, 1910.

Sixty days after sight of this first of exchange (second unpaid) pay to the order of . . . ourselves. . . . . fourteen hundred and sixty-four pounds and nine shillings.

Value received and charge the same to account of $\dfrac{100}{R\ S\ M\ I}$

bales of cotton.
To Bank of Liverpool, Ltd., (Pay London).
  Liverpool, England, SB.
   2988
  Knight, Yancey & Co.
No. 6338
 2190
 3051  54230

This bill was for 100 of the 1,000 bales of cotton which plaintiff had sold, and there was attached to the bill an instrument purporting to be a bill of lading of the 100 bales of cotton, and to be signed by the agent of the Louisville & Nashville Railroad Company of 100 bales of cotton marked R S M I for shipment to Liverpool, England. This bill was, in due course of business, purchased by the defendant, and with the bill of lading attached was sent by it to the Bank of Liverpool for acceptance and payment. On its receipt the bank notified the plaintiffs, and asked that they call and inspect the documents and advise it concerning acceptance. After inspection by their representatives the plaintiffs authorized the acceptance of the bill, and it was accepted and in due time paid to the defendant.

The acceptance was in form as follows:

  Accepted 23 Feb. 1910
   Due 27 Apl. 1910
 Payable at
Messrs. Glyn, Mills, Currie & Co.
  London.
For the Bank of Liverpool Limited.
Jno. J. Ritchie, Asst. Genl. Manager
    Robt. Richardson, Manager.

It subsequently became known that the instrument purporting to be a bill of lading was a forgery. But the spurious character of the document was not known to the defendant when it presented the bill, nor was it known to the plaintiffs when they accepted it, although at the time it was paid rumors that possibly it might be a forgery had been brought to the attention of the plaintiffs and of the Bank of Liverpool.

The action is brought to recover money paid under a mutual mistake of fact.

Stetson, Jennings & Russell, of New York City (William D. Guthrie and Charles Howland Russell, both of New York City, of counsel), for plaintiff in error.

Harrington, Bigham & Englar, of New York City (Howard S. Harrington, of New York City, of counsel), for defendants in error.

Before LACOMBE, COXE, and ROGERS, Circuit Judges.

ROGERS, Circuit Judge (after stating the facts as above). The question presented to this court involves the right of the drawee of a bill of exchange to recover from an innocent payee the money paid

if it subsequently turns out that the bill of lading attached to the bill at the time of its acceptance was forged.

[1] The original transaction took place at Liverpool, England. It was there the contract for the sale and purchase of the cotton was made. The contract expressly provided that a bill of exchange should be drawn on the Bank of Liverpool. All the transactions relating to its presentation for acceptance, its acceptance and payment, took place in England. It was there that what are alleged to be the false representations and warranty were made and acted upon which are relied upon as the basis of this action. The defendant has an office and carries on a large part of its business in England, and the action against it might have been brought in that country had the plaintiffs been so disposed. As all the transactions took place in England, there is no doubt but that the law of England, as the place where the contract of acceptance was made and was to be performed, must govern and determine the rights and liabilities of the respective parties. Boyce v. Edwards, 4 Pet. 111, 123, 7 L. Ed. 799; Andrews v. Pond, 13 Pet. 65, 77, 78, 10 L. Ed. 61; Tilden v. Blair, 21 Wall. 241, 247, 22 L. Ed. 632; Scudder v. Union Bank, 91 U. S. 406, 412, 23 L. Ed. 245; Pierce v. Indseth, 106 U. S. 546, 550, 1 Sup. Ct. 418, 27 L. Ed. 254; Hall v. Cordell, 142 U. S. 116, 120, 12 Sup. Ct. 154, 35 L. Ed. 956. The English courts act upon the same principle in like cases. Rouquette v. Overmann, L. R., 102 V. 525; s. c., 4 English Ruling Cases, 287.

The trial judge felt bound by the decision on demurrer (Hannay v. Guaranty Trust Co. [C. C.] 187 Fed. 686) to direct a verdict for the plaintiffs. But the facts as developed at the trial were essentially different, and the case was materially changed. The law of England was not before the court on the hearing of the demurrer because not pleaded, and no proof of that law had been presented. The complaint under which the trial took place was an amended complaint, and not the one which was before the court on demurrer and the material difference in the state of the pleadings differentiated the case at trial from the case upon demurrer.

Courts do not take judicial notice either of the written or unwritten law of a foreign country. But the defendant in its answer to the amended complaint pleaded the English Bills of Exchange Act of 1882, and averred that there was and still is a uniform general and well-known custom or usage among bankers and cotton dealers in the United States and in England, to the effect that when bills of exchange are drawn against cotton goods sold for shipment to foreign ports, and words are inserted in said bills similar to those in the bill in question ("Charge the same to account of $\frac{100}{R\,S\,M\,I}$ bales of cotton"), such words do not change the unconditional character of the order to pay. It also averred that this usage is a part of the law merchant both of the United States and of England.

[2] The Supreme Court of the United States in Ennis v. Smith, 14 How. 400, 425 (14 L. Ed. 472), said:

"The written foreign law may be proved, by a copy of the law properly authenticated. The unwritten must be by the parol testimony of experts."

And lawyers who are practicing in the foreign jurisdiction are competent as experts to prove it.   Slater v. Mexican National Railroad Co., 194 U. S. 120, 130, 24 Sup. Ct. 581, 48 L. Ed. 900; Pierce v. Indseth, 106 U. S. 546, 1 Sup. Ct. 418, 27 L. Ed. 254; The Asiatic Prince, 108 Fed. 287, 47 C. C. A. 325; In re International Mahogany Co., 147 Fed. 147, 148, 78 C. C. A. 58; Mowry v. Chase, 100 Mass. 79; Walker v. Forbes, 31 Ala. 9; Title Guaranty, etc., Co. v. Trenton Potteries Co., 56 N. J. Eq. 441, 38 Atl. 422; Dyer v. Smith, 12 Conn. 384; Wigmore on Evidence, § 564; 16 Cyc. 886.

[3] The defendant established the law of England on the subject involved in this case by the testimony of an English barrister of 40 years' standing and experience, who was also a K. C. since 1902, and appears to have been exceptionally well qualified to testify as an expert concerning the true meaning and effect of the English Bills of Exchange Act and on the law of England.   He was the only lawyer who as legal expert testified as to the law of England.   No testimony was introduced which contradicted or qualified his positive testimony. In the Asiatic Prince, 108 Fed. 287, 289, 47 C. C. A. 325, 328, this court said:

"The law of a foreign country and its commercial usages are proved here by calling its lawyers and merchants and interrogating them. That has been done in this case, with a result which certainly warrants the conclusion that the proof is overwhelmingly the one way."

The same statement can be made in the present case.   The proof in this case also "is overwhelmingly the one way."   The plaintiffs have failed to contradict the defendant's expert as to what the law of England is, and they have made no application to take further proofs. The testimony establishes that the instrument in suit is an unconditional bill of exchange under the law of England; that its acceptance by the Bank of Liverpool was absolutely unconditional; that the presenter of a bill of exchange to the drawee for acceptance does not, under the law of England, impliedly warrant the genuineness of an accompanying document or attached bill of lading; that the duty to investigate and determine to the satisfaction of the party ultimately liable the genuineness of documents accompanying the bill of exchange (in this case the bill of lading) rests upon the person who authorizes the acceptance, in the case before us the plaintiffs herein; that under the law of England the Bank of Liverpool could not recover the amount paid by it in a suit against the payee, or in a suit against the original presenter, on the theory of money paid under a mistake of fact, or upon any other theory known to the law of England.   The expert supported his testimony by references to the cases decided in the English courts, and among them was the famous case of Price v. Neal, 3 Burr. 1354, decided in 1762, and which he stated was in principle the law of England to-day, and the case of Leather v. Simpson, 40 L. J. Ch. 177, s. c., L. R. 11, Eq. 398, which he declared had been the law of England for 40 years.   In Price v. Neal, supra, it was decided that when one accepted and paid a forged bill of exchange, upon discovering the forgery he could not recover the money from the innocent indorsee to whom he had paid it.   The court held it was incumbent

upon the acceptor to be satisfied that the bill drawn on him "was the drawer's hand" before he accepted, and that it was not incumbent on the indorsee to make the inquiry. If there was any negligence it was in the acceptor, not in the payee, and "there is no reason to throw off the loss from one innocent man upon another innocent man." In Leather v. Simpson, supra, an attempt was made by the acceptor who had paid the money on the bill of exchange to recover back the money so paid on discovering that the accompanying bill of lading was a forgery. The bill was dismissed on the ground that the plaintiff had no equity to recover back the money.

One cannot destroy the effect of the uncontradicted testimony of a qualified expert in foreign law by the mere criticism of that testimony by counsel or by references to foreign statutes and foreign decisions. Foreign law cannot be proved by the citation of statutes and decisions made by counsel. If that can be done, then the statement that courts cannot take judicial notice of the foreign law is without meaning or significance. But in this case it was expressly stipulated between the parties that:

"Any printed decision of any court in England material to the issues herein may be received in evidence at the trial upon reference to the title of the cause in which such decision was made and to the volume of reports in which it is reported, without further authentication, and without calling any expert to testify as to the law of England."

Still, no decision was introduced in evidence under this agreement which has convinced us that the testimony of the English barrister was mistaken as to the law of that country on the question involved in this case.

Counsel laid emphasis upon the character of the action, and that the plaintiffs are simply seeking to recover back money paid under a mutual mistake. But they have introduced no evidence to show that under English law A. can recover back from B. money which has been paid under a mutual mistake, where the mistake made related to a fact which, as between A. and B., the law made it the duty of A. to know.

The judgment is reversed, and a new trial ordered.