SLATER *v.* MEXICAN NATIONAL RAILROAD COM-
PANY.

CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE FIFTH
CIRCUIT.

No. 162.  Argued February 29, 1904.—Decided April 11, 1904.

A common law action cannot be maintained in a Circuit Court of the United States against a foreign railroad corporation for the wrongful killing in a foreign country of one upon whom the plaintiffs were dependent where the right of recovery given by the foreign country is so dissimilar to that given by the law of the State in which the action is brought as to be incapable of enforcement in such State.

Damages in the nature of alimony and pensions during necessity or until marriage given by the Mexican law to the wife and children of one wrongfully killed in Mexico by a railroad company cannot be commuted into a lump sum by a jury in a common law action brought in a Circuit Court of the United States.

Where foreign statutes are the basis of a claim for damages in an action in the Circuit Court of the United States parol evidence of a properly qualified expert is admissible as to the construction of such statutes upon any matter open to reasonable doubt, notwithstanding certified copies of such statutes and agreed translations thereof are already in evidence.

THE facts are stated in the opinion of the court.

*Mr. C. A. Keller, Mr. Mason Williams* and *Mr. E. Atlee* for petitioners submitted:

Under the laws of Mexico, a clearly defined right of action exists for damages arising from injuries resulting in the death of a person, against the person whose negligence was the proximate cause of such injuries, there being no contributory negligence on the part of the person injured; such action lies in favor of the surviving wife and minor children of herself and her husband, whose death so resulted. Arts. 72, 97, Constitution of Mexico; Arts. 4, 5, 6, 11, 26, 301, 304–331, inc., 363–366 inc.; Penal Code of Mexico, Arts. 9, 20, 21, 205–225, 1095; Federal Civil Code of Mexico; Art. I, Act of Congress (Mexico), December 15, 1881; Arts. 52, 53, 99, 184, 208 of the Mexican Regulations for construction, maintenance and operation of railroads; Arts. 205–225 of ch. IV, Bk. 1, Title V, of the Civil Code as to alimony; ch. II of Book III, Title 1, of Civil Procedure, as to temporary alimony; Arts. 1373–1377 inc.

The civil action for damages for injuries resulting in death, under the laws of Mexico, is a personal action, transitory in its nature; and the right created by those laws not being contrary to the public policy of the State of Texas, nor calculated to injure the State of Texas, or the United States, or their citizens, the same may be enforced at law in the Federal courts within the State of Texas, and in this suit, where, by personal process and an appearance, the wrongdoer has been subjected to the jurisdiction of the court, the citizenship of the parties

is diverse. The defendant corporation appeared and filed its pleas. *Dennick* v. *Railway Co.*, 103 U. S. 11; *Railway Company* v. *Cox*, 145 U. S. 593; *Railway Company* v. *Babcock*, 154 U. S. 190; *Huntington* v. *Attrill*, 146 U. S. 670; *Stewart* v. *B. & O. Ry. Co.*, 168 U. S. 445; *B. & O. Ry. Co.* v. *Joy*, 173 U. S. 226; *Evey* v. *Mexican Central Ry. Co.*, 81 Fed. Rep. 294; *Mexican Central Ry. Co.* v. *Marshall*, 91 Fed. Rep. 933; Story on Conflict of Laws, § 625, note *a*; Cooley on Torts (as to damages recoverable), 262, 270 *et seq.*; Texas Revised Statutes, tit. 57, Arts. 3017–3027; *Railway Co.* v. *Haist*, 72 S. W. Rep. (Ark.) 893, and cases cited.

Damages for injuries resulting in death, the payment of which may be exacted from a railroad company under the laws of Mexico, is not alimony in the statutory meaning of that term; but, the support of which the wife and children have been deprived may be considered with other facts in determining the amount of the damages occasioned, and payment of such damages may be enforced in the courts of law of this country without reference to the procedure under the code of Mexico to enforce the payment of alimony.

*Mr. LeRoy G. Denman*, with whom *Mr. Thomas W. Dodd* was on the brief, for respondent:

The main question, or rather controlling question presented by the record is, can the Circuit Courts of the United States consistently with their own forms of procedure and law of trials, take jurisdiction of, and administer the laws of Mexico in the class of cases to which this case belongs, and do substantial justice between the parties plaintiffs and defendant, giving to the plaintiffs the rights secured by the laws of Mexico, and at the same time secure to defendant its rights under that law?

If that cannot be done, then it follows, according to all the adjudicated cases, that the Circuit Courts should decline jurisdiction, or rather refuse to assume the power and responsibility of undertaking to administer such laws. *Huntington* v. *At-*

*trill,* 146 U. S. 657, 689; *Higgins* v. *Central New England R. Co.,* 155 Massachusetts, 180.

The question is one for the determination of the sovereign appealed to, to enforce such foreign law. The fact that one sovereign power may refuse to assume such responsibility, can only be invoked before another sovereign because of the soundness of the reasons given for such refusal. One sovereign may decline such jurisdiction or responsibility for reasons another sovereign might deem not well taken.

As to the enforcement of foreign laws by the different States of the United States, which has generally arisen out of resorts to the courts of one of the States to enforce the laws of a sister State of our union of States, in every instance, each State as a sovereign has, for itself, according to its own discretion of a sound public policy, decided whether it would take jurisdiction or decline to do so. In some instances in the history of our Federal Judicature, these courts have refused to follow the rule established by the decisions of the state courts in which they hold sessions, in the class of cases to which this belongs. In Texas the courts hold that they will decline to take jurisdiction, and assume the responsibility of undertaking to administer the laws of Mexico in ordinary personal injury suits. *Mexican National R. R. Co.* v. *Jackson,* 89 Texas, 107. The United States Circuit Court of Appeals for the Fifth Circuit have refused to follow the decisions of the Supreme Court of Texas in that class of cases. *Evey* v. *Mexican Central Ry. Co.,* 81 Fed. Rep. 294; *Mexican Central Ry. Co.* v. *Marshall,* 91 Fed. Rep. 933.

It is also a well established rule of decision of the Supreme Court of Texas, to decline to take jurisdiction of claims for personal injuries resulting in death, even where the injuries occur in any of our domestic States or Territories, basing such refusal upon the fact that the statutes of the States wherein the injuries happened, upon the rights secured, were materially different from the laws of Texas in relation to same subject. *Railway Co.* v. *McCormick,* 73 Texas, 660; *Railway Co.* v. *Richards,* 68 Texas, 375.

The extensive border between this country and Mexico, coupled with the graphic description of the physical and business conditions existing along its border between the two republics, makes the question of the proper adjudication of this case one of gravity and importance, and of international concern.

It is now the accepted doctrine of this court that the laws of the country where a cause of action originates will govern in all matters touching the merits and rights secured. It is elementary, and so held by this court from its organization, that the Circuit Court cannot, in the trial of an action at law, exercise the power of a court of equity, and that in all cases or causes of action in said courts, the right will not be adjudicated and relief granted, when to do so, the power of a chancellor as contradistinguished from a law court must be exercised.

It often rests in the sound jurisdiction of the court whether or not to take jurisdiction where the cause of action arose outside of the jurisdiction and the parties are foreigners. *Gardner* v. *Thomas*, 14 Johns. 134; *Mex. Nat. Ry.* v. *Jackson*, 89 Texas, 107; Story, Conflict of Law, 38, and cases *supra*.

MR. JUSTICE HOLMES delivered the opinion of the court.

This is an action brought in the United States Circuit Court for the Northern District of Texas by citizens and residents of Texas against a Colorado corporation operating a railroad from Texas to the City of Mexico. The plaintiffs are the widow and children of William H. Slater, who was employed by the defendant as a switchman on its road and was killed through the defendant's negligence while coupling two freight cars at Nuevo Laredo, in Mexico. This action is to recover damages for the death. The laws of Mexico were set forth in the plaintiffs' petition, and the defendant demurred on the ground that the cause of action given by the Mexican laws was not transitory, for reasons sufficiently stated. The demurrer was over-

ruled, and the defendant excepted. A similar objection was taken also by plea setting forth additional sections of the Mexican statutes. A demurrer to this plea was sustained, subject to exception. The same point was raised again at the trial by a request to direct a verdict for the defendant. The judge who tried the case instructed the jury that the damages to be recovered, if any, were to be measured by the money value of the life of the deceased to the widow and children, and the jury returned a verdict for a lump sum, apportioned to the several plaintiffs. The judge and jury in this regard acted as prescribed by the Texas Rev. Stat. Art. 3027. The case then was taken to the Circuit Court of Appeals, where the judgment was reversed and the action ordered to be dismissed. 115 Fed. Rep. 593; 53 C. C. A. 239.

There is no need to encumber the reports with all the statutes in the record. The main reliance of the plaintiffs is upon the following agreed translation from the Penal Code, Book 2, "Civil Liability in Criminal Matters." "Art. 301. The civil liability arising from an act or omission contrary to a penal law consists in the obligation imposed on the party liable, to make (1) restitution, (2) reparation, (3) indemnization, and (4) payment of judicial expenses."

"Art. 304. Reparation comprehends: Payment of all damages caused to the injured party, his family or a third person for the violation of a right which is formal, existing and not simply possible, if such damages are actual, and arise directly and immediately from the act or omission complained of, or there be a certainty that such act or omission must necessarily cause, a proximate and inevitable consequence." Coupled with these are articles making railroad companies answerable for the negligence of their servants within the scope of the servants' employment. Penal Code, Bk. 2, Arts. 330, 331; Regulations for the Construction, Maintenance and Operation of Railroads, Art. 184. We assume for the moment that it was sufficiently alleged and proved that the killing of Slater was a negligent crime within the definition of Article 11 of the

Penal Code, and, therefore, if the above sections were the only law bearing on the matter, that they created a civil liability to make reparation to any one whose rights were infringed.

As Texas has statutes which give an action for wrongfully causing death, of course there is no general objection of policy to enforcing such a liability there, although it arose in another jurisdiction. *Stewart* v. *Baltimore & Ohio R. R.*, 168 U. S. 445. But when such a liability is enforced in a jurisdiction foreign to the place of the wrongful act, obviously that does not mean that the act in any degree is subject to the *lex fori*, with regard to either its quality or its consequences. On the other hand, it equally little means that the law of the place of the act is operative outside its own territory. The theory of the foreign suit is that although the act complained of was subject to no law having force in the forum, it gave rise to an obligation, an *obligatio*, which, like other obligations, follows the person, and may be enforced wherever the person may be found. *Stout* v. *Wood*, 1 Blackf. (Ind.) 71; *Dennick* v. *Railroad Co.*, 103 U. S. 11, 18. But as the only source of this obligation is the law of the place of the act, it follows that that law determines not merely the existence of the obligation, *Smith* v. *Condry*, 1 How. 28, but equally determines its extent. It seems to us unjust to allow a plaintiff to come here absolutely depending on the foreign law for the foundation of his case, and yet to deny the defendant the benefit of whatever limitations on his liability that law would impose. In *Northern Pacific R. R.* v. *Babcock*, 154 U. S. 190, 199, an action was brought in the District of Minnesota for a death caused in Montana, and it was held that the damages were to be assessed in accordance with the Montana statute. Therefore we may lay on one side as quite inadmissible the notion that the law of the place of the act may be resorted to so far as to show that the act was a tort, and then may be abandoned, leaving the consequences to be determined according to the accident of the place where the defendant may happen to be caught. See further *Pullman Palace Car Co.* v. *Lawrence*, 74 Mississippi, 782, 801, 802, *et seq.; Morris* v.

*Chicago, Rock Island & Pacific Ry.*, 65 Iowa, 727, 731; *Mexican National Ry.* v. *Jackson*, 89 Texas, 107; *Bruce* v. *Cincinnati R. R.*, 83 Kentucky, 174, 181; *Holmes* v. *Barclay*, 4 La. Ann. 64; *Atwood* v. *Walker*, 179 Massachusetts, 514, 519; Minor, Conflict of Laws, 493, § 200. We are aware that expressions of a different tendency may be found in some English cases. But they do not cover the question before this court, and our opinion is based upon the express adjudication of this court and as it seems to us upon the only theory by which actions fairly can be allowed to be maintained for foreign torts. As the cause of action relied upon is one which is supposed to have arisen in Mexico under Mexican laws, the place of the death and the domicil of the parties have no bearing upon the case.

The application of these considerations now is to be shown. The general ground on which the plaintiffs bring their suit is, as we have stated, that there is a civil liability imposed on the railroad company arising from an act contrary to the penal law—a negligent crime, as it is called in the code. But the code contains specific provisions for the case of homicide. These necessarily override the merely general rule for torts which also are crimes. *Mutual Life Ins. Co. of New York* v. *Hill*, 193 U. S. 551. By Art. 311 the right is personal to the parties mentioned in Art. 318, and is no part of the estate of the deceased. The specific cause of action is the killing of the deceased. So far as appears, apart from that and the following articles, these plaintiffs would have no right of action for the cause alleged. For Art. 304 seems to presuppose a right in the family, not to create one, and we cannot assume a general right of the members of a family to sue for causing death. By Article 318 civil responsibility for a wrongful homicide includes, besides the expenses of medical attendance and burial and damages to the property of the deceased, the expenses "of the support not only of the widow, descendants and ascendants of the deceased, who were being supported by him, he being under legal obligations to do so, but also to the posthumous descendants that he may leave." Then, by Art.

319, the obligation to support shall last during the time that the deceased might have lived, calculated by a given life table, but taking the state of his health before the homicide into consideration, but "the obligation shall cease: 1. At whatever time it shall not be absolutely necessary for the subsistence of those entitled to receive it. 2. When those beneficiaries get married. 3. When the minor children become of age. 4. In any other case in which, according to law, the deceased, if alive, would not be required to continue the support." It is unnecessary to set forth the detailed provisions as to support in other parts of the statutes. It is sufficiently obvious from what has been quoted that the decree contemplated by the Mexican law is a decree analogous to a decree for alimony in divorce proceedings—a decree which contemplates periodical payments and which is subject to modification from time to time as the circumstances change. See, also, Arts. 1376, 1377, of the Code of Procedure, and Penal Code, Bk. 2, Art. 363.

The present action is a suit at common law and the court has no power to make a decree of this kind contemplated by the Mexican statutes. What the Circuit Court did was to disregard the principles of the Mexican statute altogether and to follow the Texas statute. This clearly was wrong and was excepted to specifically. But we are of opinion further that justice to the defendant would not permit the substitution of a lump sum, however estimated, for the periodical payments which the Mexican statute required. The marriage of beneficiaries, the cessation of the absolute necessity for the payments, the arising of other circumstances in which, according to law, the deceased would not have been required to continue the support, all are contingencies the chance of which cannot be estimated by any table of probabilities. It would be going far to give a lump sum in place of an annuity for life, the probable value of which could be fixed by averages based on statistics. But to reduce a liability conditioned as this was to a lump sum would be to leave the whole matter to a mere guess. We may add that by Art. 225, concerning alimony, the right

cannot be renounced, nor can it be subject to compromise between the parties. There seems to be no possibility in Mexico of capitalizing the liability. Evidently the Texas courts would deem the dissimilarities between the local law and that of Mexico too great to permit an action in the Texas state courts. *Mexican National Ry.* v. *Jackson,* 89 Texas, 107; *St. Louis, Iron Mountain & Southern Ry.* v. *McCormick,* 73 Texas, 660. The case is not one demanding extreme measures like those where a tort is committed in an uncivilized country. The defendant always can be found in Mexico, on the other side of the river, and it is to be presumed that the courts there are open to the plaintiffs, if the statute conferred a right upon them notwithstanding their absence from the jurisdiction, as we assume that it did, for the purposes of this part of the case. See *Mulhall* v. *Fallon,* 176 Massachusetts, 266.

So far as appears, the civil liability depends upon penal liability; no different suggestion has been made; and thus far we have taken it for granted that the defendant was within the penal law. The Circuit Court made the same assumption, although the question was one of fact, in case the jury should find the negligence relied upon to be proved. But whether or not a railroad company was subject to penalty for a homicide caused by the negligence of its servants did not appear. It has occurred to us, although no such argument was made, that it might be sought to sustain the liability on a different ground. The alleged cause of the accident was the different height of the draw-heads on two cars which the deceased attempted to couple as they came together. By Art. 52 of the Mexican Railroad Regulations it is required that "the cars which enter into the make up of a train shall have draw-heads of the same height." By Art. 208 of the same "all violations of this law which companies (railroad) commit shall be subject to punishment by the administration of a fine up to five hundred dollars, which the department of public works shall assess, reserving always the right of individuals through indemnity and the liabilities which the companies may incur through

criminal acts and omissions committed by them." It might
be argued that these sections, coupled with Articles 301 and
304 of the Penal Code, to which we referred in the beginning,
were enough to create the liability without regard to the ques-
tion of homicide. To this it might be enough to answer that
it does not appear that a law imposing a fine to be assessed by
the department of public works is a penal law within the
meaning of the code—that, as we have said in a different con-
nection, when the tort relied on is a homicide the specific
provisions for homicide override merely general rules, and
that the plaintiffs come here relying, as they have to rely, upon
a statute which gives them a right of action independent of
the deceased, and that the statute is made expressly and only
for the case of homicide. Penal Code, Bk. 2, Art. 311.

But what we last have said brings into consideration an-
other error of the Circuit Court which hitherto we have not
mentioned. The defendant offered the deposition of a Mexican
lawyer as to the Mexican law. This was rejected, subject to
exception, seemingly on the ground that the agreed translation
of the statute was the best evidence. So no doubt they were,
so far as they went, but the testimony of an expert as to the
accepted or proper construction of them is admissible upon
any matter open to reasonable doubt. Many doubts are left
unresolved by the documents before us. The expert would
have testified that where 'no criminal proceedings had been
had, the right of the widow and children was dependent upon
the court's finding that the killing was a crime as defined by the
penal code, and that the right was in the nature of alimony or
pension to be paid in installments for periods of time fixed by
the court. Without stating his testimony more fully, we have
said enough to show that it should have been received. Seem-
ingly he understood that he was testifying in a case against a
railroad, and if so he furnished further reasons for denying any
liability except on the footing of homicide. In a case of homi-
cide he excluded the argument that there was a right to a lump
sum under Arts. 301, 304, distinct from the right of alimony,

SLATER v. MEXICAN NATIONAL R. R. CO.    131

194 U. S.    The Chief Justice, Harlan and Peckham, JJ., dissenting.

and he confirmed the conclusion drawn from the language of the code as to what would be the nature of a Mexican decree in such a case.   There may be other matters which would have to be considered before the verdict could be sustained, but what we have said seems to us sufficient to show that the judgment of the Circuit Court of Appeals should be affirmed.

*Judgment affirmed.*

Mr. Chief Justice Fuller, with whom concurred Mr. Justice Harlan and Mr. Justice Peckham, dissenting.

Slater, the deceased, was a citizen of Texas, residing at Laredo in that State.   The Mexican National Railroad Company was a corporation of Colorado, owning and operating a railroad from Laredo to the City of Mexico.   Its superintendent resided in Laredo.   Slater was fatally injured through the negligence of the company while working in its yard in New Laredo, just across the Rio Grande in Mexico, and died in Laredo from the injuries so inflicted.   His wife and children, who resided in Laredo, brought this suit in the Circuit Court of the United States, diverse citizenship being the ground of jurisdiction, and no objection in that regard arises.   Defendant did not "happen to be caught" in Laredo, but was domiciled there.

The laws of Texas provided that an action for damages on account of injuries causing death may be brought when the death is caused by the wrongful act, negligence, unskillfulness, or default of another, and without regard to any criminal proceedings in relation to the homicide.   The jury are to give such damages as they may think proportioned to the injury resulting from the death, to be divided among the persons entitled in such shares as found by the verdict.   The jury pursued that course in this case under the instructions of the Circuit Court.

By the laws of Mexico, damages are recoverable for death by wrongful act, but they, it is said, are awarded as support by decree in the nature of alimony or pension.

As the two countries concur in holding that the act complained of is the subject of legal redress, the question is whether recovery in this cause must be defeated because the law of Mexico controls and cannot be enforced in Texas.

It seems to me that the method of arriving at and distributing the damages pertains to procedure or remedy, that is to say, to the course of the court after parties are brought in, and the means of redressing the wrong, and I think the general rule that procedure and remedy are regulated by the law of the forum is applicable.   2 Rawle's Bouvier, 870; *Kring* v. *Missouri*, 107 U. S. 221; *Stewart* v. *Baltimore & Ohio Railroad Company*, 168 U. S. 445.

In *Northern Pacific Railroad Company* v. *Babcock*, 154 U. S. 190, 199, the company was not a corporation of Minnesota, and the ruling simply was that the right to recover was governed by the *lex loci*.   The amount found was within the law of Minnesota as well as that of Montana.

The extent of damages does not enter into any definition of the right enforced or the cause of action permitted to be prosecuted.   Finch, J., *Wooden* v. *Railroad Company*, 126 N. Y. 10.

In *Scott* v. *Lord Seymour*, 1 H. & C. 219, which was an action by one British subject against another for an assault committed in a foreign country, it was held unanimously by the Courts of Exchequer and of the Exchequer Chamber that the objection that by the foreign law compensation in damages could not be recovered until certain penal proceedings had been commenced and determined there, was an objection to procedure merely, and not a bar to the action in England. And many of the judges were of opinion that an action was maintainable for any act which would have been a tort if done in England, and, whether actionable or not, was unjustifiable or wrongful, in a broad sense, under the law of the foreign country where the act was done.

Mr. Justice Wightman, (Willes, J., in effect concurring,) specifically held that if an action would lie by the English law for a particular wrong, the English courts would give redress

for it, though it was committed in a country by the laws of which no redress would be granted, if the parties were both British subjects.

This case has never been overruled, and is cited as authority by Mr. Pollock in his work on Torts (6th ed.), p. 201.

At all events, the rule in England is well settled, as thus laid down in *Machado* v. *Fontes*, (1897) L. R. 2 Q. B. 231: "An action will lie in this country in respect of an act committed outside the jurisdiction if the act is wrongful both in this country and in the country where it was committed; but it is not necessary that the act should be the subject of civil proceedings in the foreign country." *Phillips* v. *Eyre*, (1870) L. R. 6 Q. B. 1, and *The M. Moxham*, (1876) 1 P. D. 107, were there cited and applied.

In *Phillips* v. *Eyre*, Willes, J., delivering the opinion of the Exchequer Chamber, said: "As a general rule, in order to found a suit in England, for a wrong alleged to have been committed abroad, two conditions must be fulfilled. First, the wrong must be of such a character that it would have been actionable if committed in England. . . . Secondly, the act must not have been justifiable by the law of the place where it was done."

In *The Halley*, L. R. 2 P. C. 193, 203, Lord Justice Selwyn, speaking for the court, said: "It is true that in many cases the courts of England inquire into and act upon the law of foreign countries, as in the case of a contract entered into in a foreign country, where, by express reference, or by necessary implication, the foreign law is incorporated with the contract, and proof and consideration of the foreign law therefore become necessary to the construction of the contract itself. And as in the case of a collision on an ordinary road in a foreign country, where the rule of the road in force at the place of collision may be a necessary ingredient in the determination of the question by whose fault or negligence the alleged tort was committed. But in these and similar cases the English court admits the proof of the foreign law as part of the circumstances

attending the execution of the contract, or as one of the facts upon which the existence of the tort, or the right to damages, may depend, and it then applies and enforces its own law so far as it is applicable to the case thus established; but it is, in their Lordship's opinion, alike contrary to principle and to authority, to hold, that an English court of justice will enforce a foreign municipal law, and will give a remedy in the shape of damages in respect of an act which, according to its own principles, imposes no liability on the person from whom the damages are claimed."

The rule in this court goes further, for "by our law, a private action may be maintained in one State, if not contrary to its own policy, for such a wrong done in another and actionable there, although a like wrong would not be actionable in the State where the suit is brought." *Huntington* v. *Attrill*, 146 U. S. 657, 670.

It is enough that the act complained of here was wrongful by both the law of Texas and the law of Mexico, and in such a case the action lies in Texas, except where the cause of action is not transitory, but is purely local such as trespass to land. *Dennick* v. *Railroad Company*, 103 U. S. 11; *Railway Co.* v. *Cox*, 145 U. S. 593; *Ellenwood* v. *Marietta Chair Company*, 158 U. S. 105; *Mitchell* v. *Harmony*, 13 How. 115; *McKenna* v. *Fisk*, 1 How. 241.

It is suggested that the Texas courts have held that there can be no recovery in Texas because of the dissimilarity in the ascertainment of damages between the law of Texas and that of Mexico. And this seems to have been so ruled in *Mexican National Railway* v. *Jackson*, 89 Texas, 107, but the question is one of general law, and we are not bound by that ruling. Moreover, the railway company is stated in that case to have been "a Mexican corporation whose line of railway extended into Texas," whereas in this case the company is a corporation of Colorado, domiciled in Texas, and whose line of railway extends from Texas into Mexico. Again, after that decision was rendered, in *Mexican Central Railway Company* v. *Mitten*,

13 Tex. Civ. App. 653, the company being a Massachusetts corporation and Mitten a citizen of Texas, the Court of Civil Appeals for the Fourth District of Texas held to the contrary.

The court said: "If the construction placed upon the decision in the *Jackson* case be the true one, and some of its expressions would seem to justify the construction, it is a practical denial of remedies for wrongs that may be inflicted by one of our citizens upon another in Mexico, . . ." and: "We are not willing to subscribe to such doctrine and will not extend the scope of the decision referred to beyond the purview of the facts of that case."

The Supreme Court of Texas apparently accepted this view for it refused to grant a writ of error to review the judgment. 13 Tex. Civ. App. v. And see *Evey* v. *Mexican Central Railway Company,* 81 Fed. Rep. 294.

I entirely agree with the views expressed in *Scott* v. *Seymour,* to which I have referred. The legal relations of Slater with the United States and Texas were not destroyed by his crossing the Rio Grande to work in the railroad yard. This Colorado corporation was domiciled in Texas, as Slater was. The laws of Texas protected them alike. The injury was inflicted in Mexico and resulted fatally in Texas. The wrongful act was actionable in Texas and in Mexico.

The jurisdiction of the Circuit Court over person and subject matter was unquestionable, and I cannot accept the conclusion that the form in which the law of Mexico provides for reparation to its own citizens constitutes a bar to recovery in Texas in litigation between citizens of this country.

My brothers HARLAN and PECKHAM concur in this dissent.