## JARRETT et al. v. WABASH RY. CO.
### No. 240.

Circuit Court of Appeals, Second Circuit.
April 11, 1932.

Pierce & Greer, of New York City (Clifton P. Williamson and H. S. Ogden, both of New York City, of counsel), for appellant.

Bernard Gordon, of New York City (Barney B. Fensterstock, of New York City, of counsel), for appellees.

Before MANTON, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

MANTON, Circuit Judge.

On April 28, 1929, the Jarrett family, husband, wife, and two young daughters, were motoring near Chatham in the Province of Ontario, Canada, when, while crossing the

appellant's railroad tracks at road grade on Provincial Highway No. 2, their motorcar was struck by a railroad freight train proceeding west. The collision resulted in the death of Mr. Jarrett and his daughter, Betty Jane. Mrs. Jarrett and her daughter, Suzanne, sustained personal injuries. The motorcar was damaged. The jury rendered a verdict for the appellee for each of these losses.

This family were driving from Detroit to their home in Brooklyn, N. Y., and at the time were on the public highway proceeding north across the railroad roadbed upon which there were two tracks running about east and west. As Mr. Jarrett, who was driving the car, approached the crossing, he stopped his car to allow an east-bound freight train to pass. He was thus stopped about 1½ minutes when another motorcar drew up on his left, stopped, and waited for the freight to pass. As the caboose of the east-bound freight train passed, the motorcar to the left of the Jarrett car started ahead, crossing the rails, and other cars headed in the opposite or south-bound direction proceeded to cross. Mr. Jarrett was obliged to slow up somewhat to accommodate the passage of these motorcars. As he proceeded across the first track, another freight train bound in the westerly direction approached and he turned his car to the right to avoid collision with it, but was unsuccessful, and the forward part of the locomotive struck his car causing this serious loss.

The crossing is unprotected by gates, flagman, lights, or automatic signal. There were no street or highway lights. It was a much-traveled highway and was heavily traveled on this evening, at about 10 o'clock, when the collision occurred.

█ The evidence justified the jury in finding that both Mr. and Mrs. Jarrett looked both ways and were alert to hear signals of passing trains. Although both were strangers to the crossing, they were fully informed of its location for, when they approached the tracks, they stopped as described. Beyond the rumbling and clanking of the east-bound freight, they heard no signals of the passing train. Mrs. Jarrett said, in answer to questions, that she listened, heard no signal of bell or whistle of the colliding train, and that she did not see its headlight. She did not know they were passing over a double-track roadbed. Mr. Jarrett was of good habits and in the full possession of his faculties, and an industrious and faithful father and husband. The engineer of the colliding train knew the dan-

ger of this unprotected crossing over which he had operated trains for many years. He knew that it was a highway accustomed to heavy traffic. He also knew that the east-bound freight train was very long, containing approximately 47 cars. He was fully apprised of the statutory requirements of Canada to maintain a headlight in good condition, and he said he had two lamps, one dimmed and one brightly shining. General Order, Board of Railway Commissions of Canada, pursuant to Railway Act of Canada 1919, chapter 68. His train was over an hour late and was run with the throttle wide open for maximum speed. The bell was not set for ringing, but the engineer, fireman, and brakeman, who were appellant's witnesses, said the whistle was sounded and the bell rung at the whistling post 80 rods from the crossing and continued until the crossing was passed. Whether or not these signals were given or were sufficient as notice of approach to the crossing, in view of the passing of the east-bound freight train, was a jury question. The noises of the east-bound train might, to some extent, have drowned an insufficient or too short signal given by the colliding train. The engineer admitted seeing the headlights of the motorcars waiting at the crossing.

█ The jury were peculiarly fitted to decide the issue of due care to be exercised by the railroad company's employees under all these circumstances. The Railway Act of Ontario clearly provides that nothing done or required under the act shall relieve or affect the appellant's liability to any injured person for any other negligent act or acts. Section 391, subdiv. 4, of the Railway Act of Canada; section 267, subdiv. 3, of the Railway Act of Ontario (Rev. St. Ontario 1927, c. 224). It is thus apparent that the statutory provisions do not constitute the maximum measure of care required of railroads in Canada. Hines v. Hoover, 271 F. 645 (C. C. A. 5); Lehigh V. R. R. Co. v. Kilmer, 231 F. 628 (C. C. A. 2); Vandewater v. N. Y. & N. E. R. R., 135 N. Y. 583, 32 N. E. 636, 18 L. R. A. 771. The Supreme Court, in Grand Trunk Ry. Co. v. Ives, 144 U. S. 408, 12 S. Ct. 679, 686, 36 L. Ed. 485, speaking of the extent of care required in addition to the statutory requirements as to signals, said: "The underlying principle in all cases of this kind which requires a railroad company not only to comply with all statutory requirements in the matter of signals, flagmen, and other warnings of danger at public crossings, but many times to do much more than is required by positive enactment, is that neither the legislature nor railroad commissioners can arbi-

trarily determine in advance what shall constitute ordinary care or reasonable prudence in a railroad company, at a crossing, in every particular case which may afterwards arise; for, as already stated, each case must stand upon its own merits, and be decided upon its own facts and circumstances, and these are the features which make the question of negligence primarily one for the jury to determine, under proper instructions from the court." See Continental Improvement Co. v. Stead, 95 U. S. 161, 24 L. Ed. 403; Chicago & N. W. Ry. Co. v. Netolicky, 67 F. 665 (C. C. A. 8); Canadian Pac. Ry. v. Slayton, 29 F.(2d) 687 (C. C. A. 2); Central R. R. of N. J. v. Hudson, 209 F. 176 (C. C. A. 3).

The jury might well have found on this evidence that no signal at all was given or that a prudent engineer, in the exercise of ordinary care, would have made a more continuous use of his whistle, prolonging the blasts or, perhaps, employing a continuous series of short, sharp, piercing blasts. Continental Improvement Co. v. Stead, supra; Pennsylvania R. R. Co. v. Moffitt (C. C. A.) 1 F.(2d) 276; Gray v. Wabash Ry. Co., 28 Dom. L. R. 244 (Canada). The Canadian law was proved and is of like requirement. Reynolds v. Can. Pac. R. Co. and Craig v. Same, 3 Dom. L. R. 888; Wabash R. R. Co. v. Misener, 38 Can. S. C. Rep. 94; Laporte v. Canadian Pac. R. Co., 4 Dom. L. R. 110; Peart v. Grand Trunk R. R. Co., 10 Ont. A. R. 191, affirmed Privy Council, 10 Ont. L. R. 753.

The Ontario statutes required that the whistle be blown 80 rods from the railroad crossing and the bell rung continuously from the time of blowing of the whistle until the engine has crossed the highway. They required the train to be equipped with efficient apparatus, appliances, and means "to check at will the speed of the train, and bring the same safely to a standstill, as expeditiously as possible." Rev. Statutes of Canada 1927, c. 170, §§ 298, 308. The testimony to the effect that the engine whistle was blown and the bell rung was given by employees of appellant, and, of course, their interest as such made their credibility a question of fact for the jury. Delaware, L. & W. R. R. v. Devore, 114 F. 155 (C. C. A. 2); Wabash Ry. Co. v. Misener, 38 Canadian Sup. Ct. Rep. 94; Reynolds v. Canadian Pac. Ry., 3 Dom. L. R. 888. The negligence of the appellant was therefore properly submitted to the jury, and the jury's finding fairly imports that the statutory signals were not given, or that a sufficient warning as required by the statute was not given. Peart v. Grand Trunk R. R. Co.,

supra; Wabash Ry. Co. v. Misener, supra; Gray v. Wabash Ry. Co., supra.

In Canada, it is provided, by the Contributory Negligence Act, that where contributory negligence is found to have been established, the jury shall find (1) the entire amount of damages to which a plaintiff would have been entitled had no such contributory fault existed, and (2) the degree in which each party was in fault and the manner in which the amount of damages should be apportioned so that the plaintiff shall have judgment only for so much thereof as is proportionate to the degree of fault imputable to the defendant. Where such determination is impracticable, it is provided that the defendant shall be held liable for one-half the damages sustained. Contributory Negligence Act, Rev. Statutes of Ontario 1927, chapter 103. This act affected the substantive rights of the appellee in her effort to recover. Fitzpatrick v. Internat. Ry. Co., 252 N. Y. 127, 169 N. E. 112, 68 A. L. R. 801. The liabilities of the parties to an action are fixed by the law of the territorial jurisdiction within which the wrong is done and the parties are at the time of doing it. Cuba R. R. Co. v. Crosby, 222 U. S. 473, 32 S. Ct. 132, 56 L. Ed. 274, 38 L. R. A. (N. S.) 40; Slater v. Mexican Nat. R. R. Co., 194 U. S. 120, 24 S. Ct. 581, 48 L. Ed. 900. The settled policy of our law is not opposed to enforcing the right of action given by the Fatal Accidents Act of Canada (Rev. Statutes of Ontario 1927, chapter 183).

The right of recovery of damages with the aid afforded by these enactments has been frequently considered by the English and Canadian courts. Dublin Wicklow R. R. Co. v. Slattery, 3 App. Cases 1155 (1878); Jewell v. Grand Trunk R. R., 55 Ont. L. Rp. 617; Gauley v. Canadian Pac. Ry. Co., 65 Ont. L. R., 477; Reynolds v. Canadian Pac. Ry. Co. and Craig v. Canadian Pac. Ry. Co., 3 Dom. L. R. 888; Canadian Natl. Ry. v. Clark, 4 Dom. L. R., 727; Wabash Ry. Co. v. Misener, 38 Canadian Sup. Ct. Rep. 94; Grand Trunk Ry. Co. v. Hainer, 36 Canadian Sup. Ct. Rep. 180. And the courts have held that under somewhat similar circumstances as exist in the instant case, contributory negligence was a jury question and, if found to have been established, would necessarily result in an apportionment of the damages. The time of night, the noise of a passing freight train, unfamiliarity of the deceased with the fact that there were two tracks on this roadbed, that other cars proceeded to cross ahead of him, and the testimony that

no signal or an insufficient signal of the on-coming train was given, were all circumstances for the jury's consideration. The question of contributory negligence depended upon these, and the court could not say as a matter of law, that the deceased was guilty of negligence in crossing. Kinghorn v. Penn. R. R. Co., 47 F.(2d) 588 (C. C. A. 2).

We have examined the instructions to the jury and regard them as correctly stating the rules of law applicable to the case and the questions here involved. There are no other errors assigned which require further consideration.

Judgment affirmed.