F. W. Woolworth Co. et al. v. United States

No. 4922.—Invoices dated Sonneberg, Germany, April 14, 1936, etc. Certified
April 15, 1936, etc.
Entered at Boston, Mass., May 5, 1936; New York December 3,
1935; Baltimore, Md., August 1, 1935; Philadelphia, Pa., July 17,
1937; Houston, Tex., November 15, 1935; New Orleans, La.,
October 29, 1936; Seattle, Wash., August 26, 1936; Sumas, Wash.,
November 13, 1936; Portland, Oreg., July 19, 1937; San Francisco,
Calif., May 25, 1937; Los Angeles, Calif., August 19, 1935; etc.
Entry Nos. 13878, 768666, 433, 591, 474–H, 1279, 1161, 273–K, 80,
12360, 1392, etc.

(Decided June 3, 1940)

*Sharretts & Hillis* (*Edward P. Sharretts* and *Arthur L. Tallman* of counsel) for
the plaintiffs.
*Webster J. Oliver*, Assistant Attorney General (*Dorothy C. Bennett*, special
attorney), for the defendant.

Brown, Judge: This matter has already been elaborately litigated
upon a large record. The principal question contested was whether
the sales of certain people who manufacture Christmas-tree orna-
ments, and other glass novelties, and cocktail sticks in their homes in
the Sonneberg-Lauscha district of Germany, constitute the market
for dutiable purposes, as claimed by the importers, their cash prices
being the basis of the entered or claimed values; or, whether higher
prices charged by certain commissionaires or factors, made on credit
extended, was the proper basis of dutiable value. This latter was
the basis of the advance made by the United States appraisers of
about 30 per centum for the Christmas-tree ornaments, and about
25 per centum for the glass novelties, and about 60 per centum for
the cocktail sticks.

In an exhaustive opinion, Judge Sullivan (Reap. Dec. 4155, 72
Treas. Dec. 1140, involving reappraisements 112043–A, etc.), made
the following findings:

(1) That the principal markets for these Christmas-tree ornaments and glass
articles in Germany are located in the Sonneberg-Lauscha district.
(2) That as to the Christmas-tree ornaments there is both a foreign and export
value therefor, and that they are the same.
(3) That as to the glass articles there is an export value only.
(4) That the manufacturers of these Christmas-tree ornaments and glass
articles freely offer them for sale to all purchasers in the usual wholesale quan-
tities and in the ordinary course of trade in the Sonneberg-Lauscha district.

He therefore held:

(1) As to the Christmas-tree ornaments, that the foreign and export values
are the same; and as to the glass articles, that the export value is the market
value.

(2) That such values are the entered values, except as to the "glass artistic fruit picks" in reappraisement 114349–A, which were entered to meet advances, in which instance the market value is the invoiced unit value, plus case.

(3) The entered values are sustained, except as to the "glass artistic fruit picks" in reappraisement 114349–A where the invoiced unit value, plus case, is sustained.

This decision was affirmed by Division Two of this court in Reap. Dec. 4310, 73 Treas. Dec. 1547. That decision, in turn, so far as it affected Christmas-tree ornaments, there being no appeal on the glass novelties or cocktail sticks, was affirmed, upon the questions of law raised by our Court of Appeals in 26 C. C. P. A. 349, C. A. D. 39.

The Government refused to stipulate the following reappraisement appeals on the basis of the test case, and, as it is called, made a new case. New evidence was introduced by both sides in these cases now before the court. Thus, the issue was elaborately retried on the basis of the old record which was incorporated in the record before the court, plus the new evidence. The new combined record is enormous, requiring great care and labor in its perusal.

The new evidence, not in the prior case which went to the Court of Appeals, shows that payments, in addition to the German government's tariff minimum, must be made, or arranged for, in order to obtain deliveries of the Christmas-tree ornaments and glass novelties from the home manufacturers. They were for social security and for vacation and holiday pay. That does not appear in the evidence in the incorporated case.

The Government moved to exclude all the affidavits of the home manufacturers now presented or in the incorporated record on the ground that they were prevented from obtaining evidence to the contrary from these home manufacturers. Decision on this motion was reserved.

An attempt seems to have been made to procure some of them to sign affidavits presented by a special agent, and apparently the intervention of some German authority prevented this. This is a rather unusual method of obtaining evidence in reappraisement cases. Whatever we think of the German government stopping that from being done, we cannot hold it is a legal ground for excluding these affidavits. It is unfortunately true that due to apparent lack of understanding on the part of the German government ordinary commissions to take testimony in cases pending in the Customs Court, before United States consuls, are generally not permitted to be executed in Germany as they are in almost all other countries, but it seems that affidavits in customs cases can still be executed before American consuls in Germany which was the method used by the plaintiffs in this case.

We therefore deny the motion to exclude the houseworkers' affidavits contained in the incorporated record and overrule the objection made by the Government to new ones of the same kind offered at the trial of this case. As a result of this ruling now made Exhibits 2, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 30, 32, and 55, marked for identification, are now marked in evidence, and given the same numbers as regular exhibits.

Exhibit 23 for Identification, an affidavit of Lewis A. Marcus, manager of the buying house of S. S. Kresge Co., is now admitted in evidence under the same number.

Exhibits 3, 4, 5, 6, 7, 8, and 9, being affidavits of commissionaires or wholesale dealers, marked for identification, are now admitted in evidence and marked with the same numbers as regular exhibits.

Exhibits 26 and 27 marked for identification, being commissions to take testimony in Germany in customs cases, are now admitted in evidence as regular exhibits under the same numbers, as tending to show that commissions to take testimony can sometimes be issued and executed in Germany.

For similar reasons to the above Exhibits 28, 28A, and 29, marked for identification, are now admitted in evidence and given the same numbers as regular exhibits.

Exhibits GW, GX, and Collective Exhibit GY, filed by the Government in support of its motion to exclude houseworkers' affidavits, are now admitted in evidence and given the same letters as regular exhibits.

Exhibit GZ, being the unpublished decision of former Presiding Judge Fischer, excluding certain affidavits because the maker refused to allow his books to be examined, is plainly not admissible as evidence, being merely an unpublished authority. Objection to it is sustained and it is excluded. Treating it as an unpublished authority it is not considered as bearing on the situation as it has developed before the court.

Under *Slater* v. *Mexican National Railroad*, 194 U. S. 120, a lawyer learned in the law may expound a foreign law and explain its meaning. However, the witness presented for this purpose was not considered sufficiently qualified.

The exhibits presented when he was on the stand Numbers 36, 36A, 36B, 36C, Collective 37, 37A, Collective 38, 38A, 38B, 38C, Collective 39, 39A, 39B, 39C, 39D, 39E, Collective 40, Collective 41, are admitted only so far as they state from authorized publications the German law itself. In all other respects they are excluded. The explanation of, or exposition of, a foreign law stated in a special agent's report does not become admissible because contained in such report.

In view of the conclusion which has been reached in this case it becomes unnecessary to decide whether or not the *text* of the German labor law itself has any bearing upon the dutiable value under our customs acts.

Any other exhibits marked only for identification because decision on their admissibility was reserved are now admitted in evidence with the same numbers.

Exceptions are noted for the losing party upon each ruling above.

Assuming that the houseworkers are manufacturers of Christmas-tree ornaments in the tariff sense, they have no stock, they do not advertise, and they must charge at least the amount of the German tariff to guarantee their own and their workers' remuneration as part of the Labor Front. And they must sell for cash alone, extending no credit, and make deliveries weekly.

As frankly and fully stated by Mr. Dressel's testimony, the complications in making these purchases are enormous. The goods have to be ordered, manufactured from samples of considerable variety, and the particular house-working manufacturer selected, who makes the particular ones ordered, with some care and detail. And on top of all that, certain complicated social security payments must be paid, or arranged by the purchaser, before he can procure delivery of the merchandise. In such circumstances the services of a commissionaire become necessary, indeed indispensable, to anyone in America purchasing an export sale to this country, unless he wished to remain in the district for months to perform the necessary acts as his own commissionaire.

The modern protective tariff arrangements of the acts of 1922 and 1930 make the export sale govern, if higher. Consequently, it is rational to say here that the export value here is the homeworkers' German tariff price, plus 10 per centum commission, plus 2½ per centum for putting up and packing, which 12½ per centum is the price usually charged by the commissionaires for cash sales (without credit) for export to the United States, plus outside packing.

That, apparently, is the price paid for every export sale to the United States except those, who, like the importers here, act as commissionaires for themselves through a subsidiary company operating a warehouse for that purpose in the German district.

Nor will calling it a buyer's commission avoid that consequence if everybody except those establishing subsidiary branch houses in the district has to pay it in the ordinary course of the trade. A buyer's commission forms no part of the dutiable value when the importer employing the buyer would have to pay more duty than others purchasing in an open market by reason thereof. It becomes dutiable, in my opinion, when every importer has to pay it except those with

branch houses in the foreign-market place or district. A uniform duty would include it for all, not exclude it for all, because some had branch houses.

It thus falls into the category of the buyer's commission which was held part of the dutiable value in *Muser* v. *Magone*, 155 U. S. 240, because all except those with branch houses in St. Gaul like Mr. Muser paid it. True, that commission included complicated work as does the commission here. The fact that in the *Muser* case, *supra*, it included also getting the gray goods dyed would not, in my opinion, differentiate it from the 10 per centum commission before me. Like it, it was not a seller's commission. It was a buyer's commission paid by all purchasers f. o. b. St. Gaul, except those with branch houses, which branches, as here, performed the necessary complicated work of a commissionaire dealing with these Christmas-tree ornaments.

It is true that the affidavits of the home manufacturers allege that the sales by them are in greater quantity and number than the sales by commissionaires or factors, but they manifestly include in that the sales they make to those with branch houses like the importers here who buy in very large quantities. They also swear in their affidavits they sell at the German list, or tariff, prices, equally for export or for home consumption. However, there are no invoices of sales in the record made directly to a purchaser in America, except those made through these importers' branch houses, or through others similarly situated.

An export value is therefore hereby found for the Christmas-tree ornaments before me at the home manufacturers' list or German tariff prices, being the unit invoice prices, plus 10 per centum, plus 2½ per centum, plus outside packing as invoiced (no home-market value for cash purchases being higher) for all the invoices of shipments before January 1, 1938. The invoice values since that date include a 3½ per centum addition for certain social security payments. As that is not in dispute in the cases before the court, that item is added to the finding in all the cases where it was voluntarily entered by the importer.

Taking this record as a whole, the following facts clearly appear. It would be commercially impracticable for an American prospective importer of this merchandise to buy this merchandise without having a local establishment of his own in this part of Germany, or else paying this 10 per centum minimum commission and 2½ per centum packing charge to someone there, on the spot, who made a business of handling this merchandise. The particular home manufacturers who made the particular styles he desired would have to be found and selected among many. Arrangements would have to be made to meet the cash payments to them for their relatively small weekly deliveries. A warehouse would have to be provided to store the goods until sufficient

quantities were received for practical shipment to the United States. Accounting to the German Government of quantities bought would have to be made as a basis for the required social security payments which in turn would have to be paid, or arranged for, before the merchandise was shipped to America. Without such accounting, or arrangement, the merchandise could not be bought. A commissionaire, acting in effect like a wholesale dealer, would be required for all this, who would do all the above things, as well as the ordinary duties of a commissionaire in assembling and shipping the merchandise. This, in the opinion of the writer, includes the minimum commission for cash sales (without credit) as part of the dutiable customs export value.

The authorities on the dutiability of commissions cited by both sides are not conclusive as to when commissions, whether called seller's or buyer's commission, become part of dutiable value. The question seems to depend on the facts and circumstances of each particular case.

The same principle is applied and like findings are made on export value as to the glass novelties and cocktail sticks which admittedly are not sold for consumption in Germany, resulting in the unit invoice prices, plus 10 per centum, plus 2½ per centum, plus outside packing as invoiced, plus for entries covering shipments after January 1, 1938, the voluntary addition of 3½ per centum when made by the importers. Judgment will issue accordingly.