INDEMNITY INS. CO. OF NORTH AMERI-
CA v. PAN AMERICAN AIRWAYS,
Inc., et al.

District Court, S. D. New York.

Dec. 8, 1944.

George A. Garvey, of New York City, for plaintiff.

Haight, Griffin, Deming & Gardner, of New York City, for defendant Pan American.

Socolow & Pepper, of New York City, for defendant Erwin D. Swann.

RIFKIND, District Judge.

Defendant Pan American's motion challenges the court's jurisdiction. The substantial ground of the motion is that a proper realignment of the parties reveals the absence of diversity of citizenship.

Upon the first argument of this motion, plaintiff, apprehending the risks involved in a jurisdictional doubt, agreed with the moving defendant to have the complaint amended in several respects, which will be hereinafter noted, and to drop the party whose citizenship was the same as that of the defendant Pan American. Upon that understanding defendant consented to a denial of its motion. Since then defendant has reconsidered its position and in a motion for reargument, asks to be relieved of its consent and now declares that even in its revised form the complaint is such that the court is without jurisdiction because the party proposed to be dropped is an indispensable party.

▪ Since the defect of lack of jurisdiction cannot be waived and may be noted at any time I granted reargument.

The complaint arises out of the crash of the aircraft Yankee Clipper in the harbor of Lisbon, Portugal, on February 22, 1943. Recovery is sought of the damages suffered by the father and mother of one Tamara Drasin Swann, who died in the crash. The action is brought by the compensation insurance carrier which, pursuant to its insurance contract with the decedent's employer, paid a compensation award to the father and mother of the deceased employee.

The allegations concerning the citizenship of the parties are as follows: Plaintiff is a Pennsylvania corporation. Defendant Pan American is a New York corporation. The citizenship of O. D. Sullivan, the pilot of the aircraft, is not alleged. The citizenship of defendant Erwin D. Swann, husband of the deceased, is not alleged; but it appears from defendant's affidavit, which is uncontradicted, that he is a citizen of New York.

▪ Clearly, if Erwin D. Swann should, for purposes of diversity of citizenship, be treated as a party plaintiff, the court would be without jurisdiction. City of Indianapolis v. Chase Nat. Bank, 1941, 314 U.S. 63, 69, 62 S.Ct. 15, 86 L.Ed. 47. To escape the risks inherent in this situation plaintiff proposed to amend its complaint in the following respects:

1. To allege that, under the laws of Portugal, blood relatives, including the parents of the deceased, and the husband of the deceased "have several and separate and distinct causes of action which each may separately institute and prosecute for pecuniary and moral damages resulting from the wrongful death of the deceased."

2. To drop Erwin D. Swann individually and as administrator as a party defendant and to eliminate the allegations relating to him.

By its revised complaint plaintiff would sue as assignee, under § 29(2) of the New York Workmen's Compensation Law, Consol.Laws, c. 67, of the alleged separate and several causes of action vested in the father and mother under the law of Portugal, and specifically, without reference to any cause of action which the husband might have.

▪ The rule is well established that the law of the place where the wrong is committed governs the right of action for death. Diatel v. Gleason, D.C.S.D.N.Y., 1937, 22 F.Supp. 355. It is equally well settled that such rights, having their foundation in the law of a foreign state, will be enforced unless enforcement would offend the public policy of the forum. That Federal courts sitting in New York honor the public policy of New York in cases where federal jurisdiction is founded on diversity of citizenship, is clearly the

inference to be drawn from Erie R. Co. v. Tompkins, 1938, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487.

■ The New York courts have found no conflict with their public policy in the wrongful death statutes of many of the states. See Loucks v. Standard Oil Co., 1918, 224 N.Y. 99, 120 N.E. 198. The New York rule is that a foreign statute for the recovery of damages for wrongful death is enforceable in New York "unless provisions in the statute * * * are at war with our public·policy * * *, or unless the remedies prescribed thereby are incapable of adaptation to the forms of our procedure." Wikoff v. Hirschel, 1932, 258 N.Y. 28, 179 N.E. 249, which cites Loucks v. Standard Oil Co., supra, and Slater v. Mexican Nat. R. Co., 1904, 194 U.S. 120, 24 S.Ct. 581, 48 L.Ed. 900, which held unenforceable the Mexican death statute because the damages awarded under it were in the nature of alimony and pensions during necessity or until marriage.

■ Against this background of general principle we reach the specific problem of the instant case. Defendant argues that it is part of the public policy of New York to allow but a single action for wrongful death; and so it has been held in Teti v. Consolidated Coal Co. of Maryland, D.C.N.D.N.Y., 1914, 217 F. 443, 450:

"The policy of the law in the state of New York is that in these death cases whether there be a mother and minor children or only a father or mother surviving, or both, one person entitled to the recovery or several, there shall be only one action, the recovery, if any, to be divided between the widow (if any) and next of kin, or whoever may be entitled thereto. It was a policy adopted not·merely for the protection and benefit of the claimants but the state itself. Numerous suits at law, where one will suffice, are an unnecessary expense to the state as well as the parties, as the running of courts is expensive to the state. * * *

"The policy is one action and one trial."

Clear it is, too, that the assignment to the insurance carrier, effected by Section 29 of the Workmen's Compensation Law, does not create a new and independent right. Exchange Mut. Indemnity Ins. Co. v. Central Hudson Gas & Electric Co., 1926, 243 N.Y. 75, 152 N.E. 470. In brief, the argument is that according to the allegations of the complaint, under the law of Portugal, the husband has a right to assert a claim for wrongful death; and from the affidavits it appears that he has instituted such an action in the New York Supreme Court; that the policy of New York insists upon a single action, and the husband is an indispensable party to the present action; and if he remains a party, it is clear that he should be aligned, for purposes of diversity, with the plaintiffs; and this court is without jurisdiction.

Plaintiff argues that whatever may have been the policy of New York at the time of the Teti case, it has been abandoned by the action of its legislature in creating an additional cause of action. Its reference is to § 29(5) of the Workmen's Compensation Law, whereunder a compensation insurance carrier, who [as required by § 15(8)] has paid two sums of $500 each to the state treasurer in death cases in which there are no persons entitled to compensation, may recover such amounts in an independent action. It is true that this enactment represents a departure from the "one action one trial" policy for wrongful death cases. But the argument that, by reason thereof, New York can be said to have abandoned that policy for itself in toto is flatly rejected by the Court of Appeals in United States Fidelity & Guaranty Co. v. Graham & Norton Co., 1930, 254 N.Y. 50, 171 N.E. 903.

There cannot be much doubt that New York has created a single right and a single cause of action for death. The right of action so conferred must be exercised by or at least in behalf of the entire group of beneficiaries designated by statute. So much is clear from the statute itself and from the cases already cited. Similar policies are evident in the statutes of other states.[1] Does it follow, however, that because New York has created a group right to compensation for damages resulting from death that it would refuse to honor rights conferred in severalty by foreign systems of law? United States Federal & Guaranty Co. v. Graham & Norton Co., supra, does not answer this

---

[1] St. Louis I. M. & S. R. Co. v. Needham, C.C.A.8, 1892, 52 F. 371; Mexican Nat. R. Co. v. Slater, C.C.A.5, 1902, 115 F. 593, affirmed 194 U.S. 120, 24 S. Ct. 581, 48 L.Ed. 900.

question, since it dealt with the New York death statute. But it does illuminate the problem indirectly, and its implications are not favorable to the defendant's position.

In that case, the deceased left a widow and six children. The widow and five of the children came under the protection of the Workmen's Compensation Law. The sixth did not. The widow and the protected children received a compensation award. The compensation insurance carrier brought an action against the person alleged to be responsible for the death. The court held:

"The rule against splitting causes of action is a salutary one. In the absence of some statutory mandate to the contrary, the alleged wrongdoer should not be put twice to his defense on the same cause of action. * * * The action should have been brought through an administrator as the statutory trustee of the entire group of beneficiaries." 254 N.Y. at page 55, 171 N.E. at page 904.

■ The case arose under the New York statute allowing recovery for wrongful death, § 130. Decedent's Estate Law, Consol.Laws, c. 13. The complaint was dismissed, not on the ground that it offended a local public policy insistent upon a single action in all wrongful death cases but because it violated the rule against the splitting of a single cause of action. It acknowledged the submission of the rule to a "statutory mandate to the contrary." And when New York, by statute, created an independent and additional cause of action under § 29(5) of the Workmen's Compensation Law, the New York courts had found no obstacle to its enforcement by separate action. Phoenix Indemnity Co. v. Staten Island Rapid Transit R. Co., 1929, 251 N.Y. 127, 167 N.E. 194, affirmed 281 U.S. 98, 50 S.Ct. 242, 74 L.Ed. 726. I see no very cogent reason for assuming that they would experience greater reluctance to permit enforcement in New York of multiple independent actions created by the law of Por-

tugal. There was a time when such judicial reluctance might well have been prophesied by reason of the prevalence of the doctrine that a foreign death statute would be enforced here only if the statute were substantially similar to the New York statute. But that doctrine has been most persuasively rejected by New York in Loucks v. Standard Oil Co., 1918, 224 N.Y. 99, 120 N.E. 198. There the Court said:

"The courts are not free to refuse to enforce a foreign right at the pleasure of the judges, to suit the individual notion of expediency or fairness. They do not close their doors, unless help would violate some fundamental principle of justice, some prevalent conception of good morals, some deep-rooted tradition of the common weal." (224 N.Y. at page 111, 120 N.E. at page 202.)

By that case, the enforcement of rights under foreign death statutes was rescued from the restrictions imposed by a parochial suspicion of all death statutes, a suspicion born of the fact that the common law afforded no comparable remedy.[2]

■ In the light of these authorities I am not persuaded that New York's public policy is today inhospitable to the assertion of the rights declared in the complaint. In other words, I find that while New York has, with but one exception, created a single cause of action, against those responsible for a death, in favor of a specified class of beneficiaries, it has not announced an unwillingness to recognize additional and independent causes of action against the wrongdoer whether created by New York law or foreign law. Taking the allegations of the proposed amendment as true, the husband of the deceased is not an indispensable party; and when he is dropped there will be complete diversity of citizenship and this court will have jurisdiction.[3]

The question remains whether the remedies prescribed by the alleged law of Portugal are incapable of adaptation to the

[2] See Wooden v. Western N. Y. & P. R. R. Co., 1891, 126 N.Y. 10, 26 N.E. 1050, 13 L.R.A. 458, 22 Am.St.Rep. 803, one headnote of which reads: "Also held, that the action was properly brought by the widow, as such, not as administratrix, as it is the cause of action created and arising in the state of Pennsylvania which is enforced, and so, the action must be pros-

ecuted in the name of the party to whom alone the right of action belongs."

[3] I have not overlooked the failure of the complaint to allege the citizenship of defendant Sullivan. The order should provide for an amendment to include such an allegation. See Form 2, Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c; Atchison T. & S. F. R. Co. v. Phillips, C.C.A.9, 1910, 176 F. 663.

984

forms of our procedure. Wikoff v. Hirschel, 1932, 258 N.Y. 28, 30, 179 N.E. 249. That brings us to a totally different problem arising out of the Warsaw Convention under which, if it governs this case, the defendant's liability is limited to $8300. I do not see how such a limitation can be administered if multiple actions may be brought by different parties. See Slater v. Mexican Nat. R. Co., 1904, 194 U.S. 120, 24 S.Ct. 581, 48 L.Ed. 900.

The complaint does not allege the Warsaw Convention,[4] and jurisdiction depends upon the complaint. Metcalf v. City of Watertown, 1888, 128 U.S. 586, 589, 9 S.Ct. 173, 32 L.Ed. 543; Peyton v. Railway Express Agency, 1942, 316 U.S. 350, 353, 62 S.Ct. 1171, 86 L.Ed. 1525.

Defendant having failed to establish the validity of the ground upon which it sought to be relieved of its consent to the denial of its motion, its application is denied.

Submit order.

---

[4] Even if judicial notice is to be taken of the Convention, it might give rise to a motion to dismiss for failure to state a claim; it would not support the instant motion.