**UNITED STATES ex rel. ZDUNIC v. UHL, District Director of Immigration and Naturalization.**

District Court, S. D. New York.
Dec. 30, 1943.

404

See also, 2 Cir., 137 F.2d 858.

Bennet, House & Couts, of New York City (William S. Bennet, Victor House, and Bernard A. Finkel, all of New York City, of counsel), for relator.

James B. M. McNally, U. S. Atty., of New York City (Marvin M. Notkins and Stuart Z. Krinsly, Asst. U. S. Attys., both of New York City, of counsel), and Leo Gitlin, Atty., Department of Justice, of Washington, D. C., for respondent.

LEIBELL, District Judge.

The prior proceedings in this matter are stated in the following quotations from the opinion of Swan, C. J., in 137 F.2d 858, 859:

"The relator is an alien who was arrested by agents of the Department of Justice acting under a proclamation of December 8, 1941, No. 2526, 6 Fed. Reg. 6323, made by the President pursuant to the Act of July 6, 1798, as amended, 50 U.S.C.A. § 21. After a hearing before an Alien Enemy Hearing Board and consideration of the evidence by the Attorney General, the latter ordered the relator to be held in custody by the respondent as an alien enemy. On June 2, 1942 the alien filed his petition for a writ of habeas corpus which was forthwith issued."

The district judge before whom the relator's writ had been argued "was of the opinion that the petition, return and traverse raise no substantial issue of fact." With this conclusion the Circuit Court of Appeals for this circuit did not agree and held as follows:

"The ultimate issue for determination is whether the relator is a 'native, citizen, denizen, or subject' of Germany. The meaning of those words as used in the statute, 50 U.S.C.A. § 21, presents a question of law. But whether the relator falls within one of the classes of persons to whom the statute, properly construed, is applicable involves questions of fact, including a determination of what rights and privileges

German law accords him in view of his place of birth, his long residence in Austria, his membership in the German Labor Front, his possession of a German Work Book, and any other relevant matters. Foreign law itself is a fact to be proved. Ennis v. Smith, 14 How. 400, 426, 14 L.Ed. 472; Guaranty Trust Co. v. Hannay, 2 Cir., 210 F. 810. The respondent made proof of certain features of German law by affidavits attached to the 'Amendment to Return to Writ.' The relator apparently had no opportunity to traverse the amendment before the hearing, and he does not concede that under German law he possesses the rights and privileges which respondent's expert witnesses assert. On these and any other disputed facts he is entitled to a judicial inquiry before the court can determine whether his relation to the German 'nation or government' brings him within the statutory definition of alien enemies."

The appellate court then discussed the meaning of the term "denizen" and stated:

"We are not disposed to attempt a definition of 'denizens' which goes beyond that of Blackstone. Certainly we shall not undertake it at the present time. The rights and privileges of the relator under German law, now in dispute, should be settled before we attempt to decide whether he comes within any of the classes of persons defined as alien enemies by the statute under consideration."

The judgment of the District Court dismissing the writ was reversed and the cause was remanded for hearing.

The Presidential proclamation, Federal Document No. 2526, issued December 8, 1941, related to German alien enemies. It is the relator's contention that he was a native born Yugoslav citizen, but had lived in Austria since 1922 and was there residing and employed in March 1938 when the German armies entered Austria, and Austria was declared a part of Germany.

Apparently the State Department considers the German action in relation to Austria null and void. At least so the pronouncement of United States, Great Britain and Russia at the October 1943 Moscow conference, would indicate. Those three allied powers declared that "they regard the annexation imposed on Austria by Germany on March 15, 1938, as null and void."

On November 19, 1943, a week before the date on which relator's matter had been set for a hearing before me, he was released from the custody of the respondent on parole. Since then he has not been detained as an alien enemy pursuant to any action taken under 50 U.S.C.A. § 21 and the Presidential Proclamation of December 8, 1941. But immediately after being granted his release, he was again taken into custody at Ellis Island, this time pursuant to a warrant of arrest issued November 17, 1943, by the Immigration and Naturalization Service of the Department of Justice, which was promptly served upon the relator. It charged that the relator, having been admitted as a visitor in the United States on June 23, 1939, "has remained in the United States for a longer time than permitted under said Act (the Immigration Act of May 26, 1924, 8 U.S.C.A. § 201 et seq.) or Regulations made thereunder," is illegally in this country and is subject to deportation. Respondent now claims to hold the relator in custody under the aforementioned warrant of November 17, 1943, pending a hearing which will be granted him "to show cause why he should not be deported in conformity with the law."

These new facts are set forth in a supplemental and amended return, dated November 20, 1943, to the writ of habeas corpus. Paragraphs 18 and 19 of the said return allege:

"18. There has been no examination or hearing in connection with relator's case and no determination thereof has yet been made, in accordance with the procedure provided for in said Immigration Act and the rules and regulations lawfully issued thereunder. No warrant of deportation has been issued. Every effort will be made to expedite the case and to insure the relator a prompt determination.

"19. The relator has not yet exhausted the administrative remedies afforded by the Immigration Act of 1924, and the rules and regulations lawfully issued thereunder, and other laws of the United States applicable hereto, and accordingly it is apparent that the petition for the writ of habeas corpus is premature and the respondent prays that the writ be dismissed."

In his traverse to the supplemental and amended return, the petitioner "alleges that he has been and still is held in custody as an alleged alien enemy under the alleged authority of Title 50, United States Code

Annotated, § 21;" and he also alleges "that on or about September 27, 1943 he applied for an extension of time to remain in the United States."

At the hearing before me on November 26, 1943, the Assistant United States Attorney in charge of this matter asserted that "the only question at issue at this time is whether or not the immigration authorities are properly detaining this person not as an alien enemy but as a person illegally in this country."

The respondent's attorney contended "that when the government took him (the relator) into custody that it was a wrongful act because he was not a native, a citizen, or a subject of Germany, and that the government can't take advantage of its own wrong, and that it was a wrongful act, tolling the statute. Under Mr. Uhl's letter (dated December 23, 1941) the relator would have been obliged to leave the United States before the 31st of March, 1942, and the tolling of the statute having been commenced by the wrongful act of the government on the 17th of December, the status of the relator should have been unchanged and all this while that he was in custody it remains unchanged." The government replied that even if the relator had not been paroled and even though his detention as an alien enemy were illegal, which, of course, the government does not concede, the relator is properly detained·pursuant to the immigration warrant of arrest; that until there had been a hearing and determination in the deportation proceedings, no writ of habeas corpus could issue under Rule 18b of the Rules of this Court.

The parties having thus explained their respective positions, the relator offered proof to show that he did not fall within the definition of alien enemies as set forth in the statute (50 U.S.C.A. § 21). The government did not cross-examine him on that point but did examine him on the issues relating to his arrival in this country on June 23, 1939, as a temporary visitor [Sec. 3(2) of the Immigration Act of 1924; 8 U.S.C.A. § 203], for a visit of twelve months; the various extensions he had applied for and the action taken on those applications. It was shown that on May 23, 1940, he filed an application (Ex. B) to extend the time of his temporary stay and that on August 6, 1940, the respondent as District Director of Immigration and Naturalization Service in New York informed him by letter (Ex. C) that

the period of his "temporary admission to the United States, under bond, has been extended to December 23, 1940." On December 5, 1940, the relator applied "to secure an extension of one half year to my present temporary period of admission" (Ex. D) and on April 26, 1941, he was notified by letter (Ex. E) that the period of his temporary admission had been extended to June 23, 1941. An application for a further extension of six months was made by the relator on June 16, 1941 (Ex. F), and on October 2, 1941, the respondent wrote the Fidelity and Casualty Co. of New York a letter (Ex. F(1)) as follows:

"Application to extend time of temporary stay in the United States has been made by Ivan Zdunic an alien, who was admitted for a temporary period under bond executed by you June 23, 1939.

"Upon your written consent as surety on the bond, an extension of stay to March 31, 1942, will be granted; provided passport is valid sixty days beyond that date, and is submitted to this office for inspection.

"Should you consent to the extension of time as noted in the foregoing, it is requested that you execute before a notary public with seal the attached form, and return to this office."

A copy of the letter was sent to the relator "for his information and guidance" on October 6, 1941.

Evidently the relator had written the German Embassy on September 10, 1941, asking for an extension of the validity of his passport (Fremden pass) because Exhibit G is a copy of an answer thereto, sent to the relator by registered mail September 24, 1941, advising him as follows:

"In the enclosure you will receive back your passport (Fremden Pass) after it has been examined. The extension of its validity cannot be undertaken at the present time."

On November 22, 1941, the respondent wrote the relator as follows:

"Reference is made to your request for extension of stay in the United States, and to recent letter from this office informing you that you will be granted an extension to March 31, 1942, on consent of surety, and provided the validity of your passport, or other travel document is extended sixty days beyond that date and is submitted to this office for inspection.

"To date there is no record on file of your having submitted your passport, or other travel document, valid as specified.

"You will be granted five days from date of this notice to afford you an opportunity to submit your passport, or other travel document, showing that its validity has been extended, or in lieu thereof to furnish a letter from the official representative of the country issuing your passport, or other travel document, as to why you are unable to submit passport, or other travel document extended as required.

"You are informed that the Department has directed that persons holding German passports should be instructed to submit them to the German Embassy, Washington, D. C. for extension of their validity."

To this the relator's employer, American Electro Metal Corporation, by N. Willner, its Assistant Treasurer, replied as follows:

"Reference is made to your letter of November 22nd advising that Mr. Ivan Zdunic will be granted an extension of stay to March 31st, 1942 on consent of surety and provided the validity of his passport is extended sixty days beyond that date.

"We wish to advise you that surety bond has been extended for another period of six months and his German passport was submitted to the Embassy in Washington for extension of his validity. However, Mr. Zdunic has been informed by the German Embassy that an extension will only be granted after they have checked up with Germany. As this passport has not been returned as yet by the German Embassy, it therefore cannot be submitted to you for inspection.

"Kindly advise if this is satisfactory to you under the circumstances."

There appears to be some conflict between the statements contained in Exhibit G and Exhibit I, unless the passport was resubmitted to the German Embassy between September 24, 1941, and November 24, 1941. The relator testified he did not receive the passport in the letter from the German Embassy dated September 24, 1941, that he never got it back from the German Embassy after submitting it in June 1941, that it was returned by the Swiss legation in a letter dated May 9, 1942 (Ex. 6, hereinafter quoted), and that it was removed from the letter by the United States authorities before the letter was given to the relator. It also appears from the statements of counsel, that the relator wrote the Swiss General Consul that relator had been informed by the German Embassy that his passport would be sent to the Swiss Legation for the purpose of obtaining an extension. Assuming that to be so and that Exhibit I correctly stated the facts as of November 24, 1941, it is clear that the relator had not complied with the conditions of Exhibit H up to December 17, 1941, when he was taken into custody as an enemy alien. However, within a week, on December 23, 1941, the respondent, answering the letter of American Electro Metal Corporation of November 24, 1941, asked where Mr. Zdunic resided and was employed and added: "In the meantime, it may be considered that he has been granted an extension of his temporary stay to March 31, 1942, unless contrary orders are received."

As indicated above, either the relator or someone in his behalf wrote the Swiss Legation (Department of German Interests) on May 5th about an extension of relator's passport. On May 9, 1942, the Legation wrote relator as follows:

"In reply to your letter of May 5th, we wish to advise you that we are not in a position to extend the validity of a Fremden-pass without previously obtaining permission to that effect from the authorities who originally issued the document.

"Should you wish us to pursue the matter, a cable would have to be dispatched abroad and your deposit of $25.00 on cable expenses would be required.

"Your passport is returned to you enclosed herewith."

The relator's passport (Ex. 3) had been issued December 12, 1938, and was good for one year until December 12, 1939. On April 14, 1939, it had been extended, at Innsbruck, until April 14, 1940. On March 26, 1940, at the German Consulate in Pittsburgh, it was extended to April 14, 1941, and on November 28, 1940, in New York it was extended to October 14, 1941, at the German Consulate. It was never thereafter extended.

On September 22, 1943, the relator applied to the Immigration Bureau for an extension of his temporary stay. In his application he stated that he had secured two extensions, "the last extension expiring by war conditions." Concerning his passport he stated that it "expired with declaration of war." This application (Ex. K) was

prepared by his attorney. The application was denied October 18, 1943, by W. F. Watkins, District Director of New York District, in a communication to the Commissioner (Ex. M). The denial form contained the following notations:

"Bond: Cancelled 8/5/43

"Previous extensions granted: * * * 3/31/42

"Passport status—if valid, expiration date: Expired

"The application has been denied here by reason of the fact that the alien has been interned as an enemy alien."

Mr. T. B. Shoemaker, Assistant Commissioner of Immigration, wrote the New York District Director, on November 17, 1943, as follows (Ex. N):

"Your file 99454/174 Tem NIU; Ivan Zdunic.

"The application for extension of stay of the above-named subject has been denied. His case is being forwarded to the Exclusion and Expulsion Section for appropriate attention."

From the foregoing it appears that the relator's German passport expired October 14, 1941, and that the last extension of his stay in this country, granted by the Immigration Bureau, expired March 31, 1942.

There remains for consideration what transpired in relator's matter at Ellis Island on November 19, 1943. Joseph J. Judge, an immigration inspector attached to the alien and parole section of the Naturalization Service, stationed at Ellis Island, testified that on November 19, 1943, he spoke to the relator and advised him "that he was being entered on parole as an alien enemy." Mr. Judge presented the relator with a parole agreement (Ex. O) and relator read it and said he understood it. Mr. Judge asked the relator to sign the agreement and he refused, taking exception to the fact that he was described in the agreement as a national of Germany. The parole agreement was then "witnessed" by another immigration inspector, Francis Klein, and Mr. Judge advised the relator "that he was now not held under alien enemy proceedings" and that he relinquished physical custody of relator as an alien enemy. The relator had also remarked that he would not sign the agreement "because he wished to speak to his counsel first." At the time the relator "was living in the German detention quarters where all alien enemies are held, and also immigration cases, warrant cases of Germans."

Morris A. Solomon testified that he is an immigrant inspector with the Expulsion Section of the Immigration and Naturalization Service. On November 19, 1943, at 3:30 P. M. he served a copy of the original warrant of arrest dated November 17, 1943 (Ex. L) on the relator at Ellis Island and showed him the original. Solomon testified:

"A. I advised him as to the nature of the charge in the warrant of arrest, and also told him that he will be accorded a hearing pursuant to the warrant, and that at that hearing he will be entitled to representation of an attorney at his own expense and of his own selection. I told him—I gave him a copy of the warrant of arrest and advised him that he should show it to his attorney at the earliest opportunity."

Since then the relator has been in the custody of the Expulsion Unit and he has been held at Ellis Island by the regular detention unit pursuant to the warrant of arrest. Mr. Solomon's bureau has nothing to do with enemy aliens—only with expulsion cases.

Jack Plotnikov testified that he is an immigrant inspector attached to the Expulsion Section Hearing Unit and that he has been designated to conduct the hearings in the expulsion proceedings. A date for the hearing will be fixed as soon as the files are returned to that unit's office by the United States Attorney after this proceeding is closed.

The relator testified in rebuttal that since he was served with the warrant there has been no change in the conditions under which he is detained at Ellis Island except that he is not now allowed to work. The reason for this, as testified to by Mr. Judge, is that "only alien enemies were allowed to work on the project which was an alien enemy project" and so Zdunic was removed from that project. Mr. Judge also testified that the instructions from the central office of the Immigration and Naturalization Service of the Department were that alien enemies in custody did not have the right to refuse a parole when the Attorney General paroles them, whether they signed the parole agreement or not.

Relator's attorney took the stand to show that "since we went into the war with Germany the regulations were changed so that German passports were no longer required,

and those who had German passports were no longer required to get extensions on their passports." While Mr. Bennet has had considerable experience in immigration matters, he was not in any position to testify as an expert. But assuming it to be the fact that the extension of the German passport was no longer required, that would not relieve the relator of the requirement that he apply for and obtain from the Immigration Bureau an extension of his leave to remain in this country. Otherwise, Germany's declaration of war against this country would have extended the right of thousands of visitors, with German passports, to remain here indefinitely, regardless of our Government's wishes in the matter. The United States could not be thus deprived of its right to terminate their visit and order the visiting aliens to depart.

■ Relator's argument that the Government's action in taking him into custody as an enemy alien "tolled the statute," i. e., extended the time he could legally remain in the country, has no basis in fact or law. He had been held in custody under an order of the Attorney General pursuant to a statute (50 U.S.C.A. § 21) for the restraint, regulation and removal of alien enemies within the United States, and the Presidential proclamation thereunder. Assuming that relator's birth in Yugoslavia and his residence in Austria made his classification as an alien enemy incorrect, those facts would entitle him only to release from custody as an alien enemy. His illegal custody as an alien enemy would not automatically extend the period for which he had been permitted by the Government to visit and temporarily remain in this country. There is no statute and no decided case to support that conclusion. Relator asserts the equitable maxim that no one should be permitted to profit from his own wrong and from that goes on to argue that the Government should not be permitted to charge the relator with having overstayed his time in this country, because his permit to stay here as a visiting alien expired while he was illegally held in custody by the Government as an alien enemy. I find no authority for thus penalizing the Government, if it has made a mistake in classifying relator as an alien enemy.

■ A further argument advanced against relator's detention in the immigration proceeding is that if it resulted in an order of deportation, it would not be possible to deport the relator to Yugoslavia. However, the government could hold relator a reasonable time after a deportation warrant is issued. What is a reasonable time would depend upon the facts then presented. See opinion of Judge Chestnut in Moraitis v. Delany, D.C., 46 F.Supp. 425. It may be that the military situation in Yugoslavia will then be so favorable that relator could be deported to that country.

■ The Immigration Act of 1924, 8 U.S.C.A. § 201 et seq., was not suspended as to the relator while he was in custody under the Alien Enemy Act, 50 U.S.C.A § 21 et seq. Both statutes were in effect at the same time. Relator could be held in custody under either statute without affecting the applicability of the other to the facts in his case, or he could be held under both at one and the same time. No ruling to the contrary has been cited. A defendant convicted of having violated two different statutes may be sentenced to serve terms of imprisonment for each, running concurrently. And if his sentence under one count of the indictment is legal, while his sentence under the other count is illegal, the relator is not for that reason entitled to be released on a writ of habeas corpus. McNally v. Hill, 293 U.S. 131, 55 S.Ct. 24, 79 L.Ed. 238. This should serve as an answer to another argument of relator, that he was never properly paroled from custody on the alien enemy charge and therefore could not be arrested and taken into custody under the warrant issued pursuant to the Immigration Act.

I find as a fact, however, that relator was paroled from custody on the alien enemy charge on November 19, 1943, and that he was thereafter arrested under the warrant charging him with having overstayed his time as an alien here on a temporary visit. Relator had no choice about accepting the parole. The Government's parole did not depend on his acquiescence. I find that he is now being held under the immigration warrant, legally served upon him at Ellis Island on November 19, 1943, as set forth in the respondent's supplemental and amended return.

■ It is clear that all questions bearing upon the legality of his detention under the Alien Enemy Act have become moot. Innes v. Crystal, 319 U.S. 755, 63 S.Ct. 1164, 87 L.Ed. 1708; Zimmerman v. Walker, 319 U.S. 744, 63 S.Ct. 1027, 87 L.Ed. 1700. His detention under the immigration

410

warrant is legal. 8 U.S.C.A. § 155(a) and § 214. He cannot test the legality of the Government's proceeding to deport him until he has exhausted his remedies under the Immigration Act. United States v. Sing Tuck, 194 U.S. 161, 24 S.Ct. 621, 48 L.Ed. 917; Impiriale v. Perkins, 62 App. D.C. 279, 66 F.2d 805. No examination or hearing has been held as yet for reasons hereinabove stated and of course no warrant of deportation has been issued. The writ of habeas corpus is therefore premature. Rule 18(b) of the General Rules of this Court. Whether or not the relator should be released on bail is for the Attorney General to decide. United States ex rel. Zapp v. District Director of Immigration, and Naturalization, 2 Cir., 120 F. 2d 762; 8 U.S.C.A. § 156.

The writ of habeas corpus dated June 2, 1942, is accordingly dismissed. Submit order on two days' notice.